UNITED STATES of America, Plaintiff-Appellee,

v.

Leo ZARATTINI and Anthony Zielinski, Defendants-Appellants.

Nos. 76–1416 and 76–1431.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1977.

Decided March 30, 1977.

Certiorari Denied May 31, 1977. See 97 S.Ct. 2661.

---

Edward Genson, Michael P. Toomin, Chicago, Ill., for defendants-appellants.

Samuel K. Skinner, U. S. Atty., Jeffrey J. Kent and Joseph N. Hosteny, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before PELL and WOOD, Circuit Judges, and SHARP *, District Judge.

ALLEN SHARP, District Judge.

Leo Zarattini and Anthony Zielinski were charged in a six count indictment alleging violations of Title 18, United States Code, Sections 371 and 659. After a jury trial, Zarattini and Zielinski were found guilty of having in their possession goods stolen from interstate shipment, (approximately 740 cartons of turkey and chicken) knowing the goods to be stolen and conspiracy to violate § 659.

Both defendants raise numerous issues for review.

## I. *Edward Zielinski's Grand Jury Testimony*

The defendant, Anthony Zielinski raises two issues concerning the appearance of his brother, Edward Zielinski, before the grand jury. In the first issue Zielinski argues that the government prosecutors abused the process of the grand jury by compelling his brother, an unindicted co-conspirator, to appear before the grand jury after it had returned the indictment. The thrust of Zielinski's argument is his contention that the prosecutors improperly utilized the grand jury for the sole or dominating purpose of gathering evidence for use in the pending trial. This practice has been condemned by several courts. *United States v. Sellaro,* 514 F.2d 114 (8th Cir.1973); *United States v. George,* 444 F.2d 310 (6th Cir.1971); *United States v. Dardi,* 330 F.2d 316 (2d Cir.1964). Indeed the government in its brief concedes that if Edward Zielinski had been brought before the grand jury solely for pretrial discovery in an already indicted case that this would, in fact, constitute an abuse of process.

It is the government's position that the grand jury was involved in a continuing investigation regarding Edward Zielinski's possible involvement in the disposition of meat stolen from interstate shipment. Therefore, the calling of Edward Zielinski after the indictments were returned, was not an abuse of process they contend but, rather in light of the continuing investigation, was entirely consistent with the traditional purposes and functions of the grand jury.

 Historically, the grand jury has been used as a device to investigate offenses and determine whether sufficient cause exists to formally file criminal charges against an accused. As this court has said in *In re April 1956 Term Grand Jury,* 239 F.2d 263 (7th Cir.1956):

> "The power of the grand jury is not dependent upon the court but is original and complete, and its duty is to diligently inquire into all offenses which shall come to its knowledge, whether from the court, the prosecutor, its own members or from any source, and it may make presentments of its own knowledge without any instruction or authority from the court. *Cawley v. Warren,* 7th Cir., 216 F.2d 74, 76."

See also, *Costello. v. United States,* 350 U.S. 359, 361, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1886).

---

* The Honorable Allen Sharp, United States District Court for the Northern District of Indiana, is sitting by designation.

■ This court would unduly restrict the investigatory power of the grand jury were it to hold that the return of an indictment precludes the grand jury from calling potential trial witnesses when those witnesses themselves may be the subject of a continuing grand jury investigation. As this court declared in *United States v. Braasch,* 505 F.2d 139 (7th Cir.1974):

> "The government has every right to interrogate witnesses on subjects relevant to a continuing investigation even when the evidence received may also relate to a pending indictment." *Id.* at 147.

■ Furthermore, after an examination of the grand jury transcript, we are convinced that the grand jury called Edward Zielinski as a result of the continuing investigation and not for the sole or dominating purpose of gathering evidence for the pending trial against his brother.

Therefore, in light of the foregoing, we conclude that it was not an abuse of the grand jury process to call Edward Zielinski before the grand jury after it had returned the indictment against his brother, Anthony Zielinski.

■ The second issue Anthony Zielinski raises concerning his brother's grand jury appearance involves a discovery dispute over his brother's grand jury testimony.

Upon learning of Edward Zielinski's appearance before the grand jury the defendant's attorney requested a transcript of his testimony. The government in response disclosed those portions of the transcript which it felt tended to exculpate the defendant. The government submitted the remainder of the transcript to the district court for an *in camera* inspection. The district court concluded that the government had turned over all exculpatory information and refused to require further disclosure.

The defendant, Anthony Zielinski, asserts that the trial court abused its discretion by refusing to require complete disclosure of the grand jury testimony of his brother Edward. For support the defendant relies principally upon *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Rule 16(a)(1) of the Federal Rules of Criminal Procedure and the opinions of this court in *United States v. Feinberg,* 502 F.2d 1180 (7th Cir.1974), and *United States v. McMillen,* 489 F.2d 229 (7th Cir.1972).

The defendant's support is misplaced. The mandate of *Brady* requires the government to disclose any exculpatory evidence regarding the defendant. This mandate was met in the instant case. After turning over to the defendant testimony it believed to be exculpatory, the government submitted the remaining portion of the transcript to the district court for an *in camera* inspection. The district court concluded that the government had complied with the *Brady* mandate. The import of this finding is that the testimony which was not disclosed was not exculpatory. We have no cause to disturb the district court's finding. See *U. S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), for the most recent authority here. Nothing in *Agurs* changes the result here.

■ Additionally, the defendant's reliance upon Rule 16 and *Feinberg* is also misplaced. Since *Feinberg* Rule 16 has been amended to read in part ". . . the substance of any oral statement which the *government intends to offer in evidence at the trial* made by the defendant whether before or after arrest in response to interrogation by *any person then known to the defendant to be a government agent . . .*" (emphasis added) Rule 16(a)(1)(A). Since Edward Zielinski was neither a government witness nor a government agent, Anthony Zielinski had no right under either Rule 16 or Section 3500 of Title 18, United States Code, to discover the substance of his statements to his brother as related to the grand jury by Edward Zielinski. See this court's decision in *United States v. Callahan,* 534 F.2d 763 (7th Cir.1976) and *United States v. Walk,* 533 F.2d 417 (9th Cir.1975).

■ And finally in this regard, the defendant looks to *United States v. McMillen,* 489 F.2d 299 (7th Cir.1972), cert. den. 410 U.S. 955, 93 S.Ct. 1420, 35 L.Ed.2d 687 (1973), for support. This court held in

*McMillen* that the trial court may, in the exercise of its sound discretion, require the government to produce statements of co-defendants who will not be government witnesses at trial. This court does not now extend that holding to make what was discretionary now mandatory.

## II. *Testimony of Douglas Earl Briggs*

Douglas Earl Briggs, as a co-conspirator with the defendants, Zielinski and Zarattini, pleaded guilty to the charges against him and was the government's principal witness. Both defendants raise several issues involving his testimony.

■ The first issue concerns Briggs' testimony where he relates several telephone conversations he had with Zielinski and Zarattini. The substance of the conversations disclose a dispute over the payment of the stolen goods. Briggs claims that both Zielinski and Zarattini owed him additional money for the sale of the turkey.

Both defendants argue that the district court erred in admitting the testimony. They contend that the conspiracy ended upon the initial sale and distribution of the goods and this conversation, occurring after the conspiracy had terminated, was therefore inadmissible as co-conspirator hearsay.

It is unnecessary to determine when the conspiracy ended in order to resolve this issue. Even assuming the conclusion most favorable to the defendants, that the conversations occurred after the conspiracy terminated and therefore were inadmissible, their admission would still only constitute harmless error in light of all the other evidence presented in this trial. (For a parallel discussion of post-indictment statements see *U. S. v. Jeffers*, 520 F.2d 1256, 1270 (7th Cir.1975) Stevens, J.)

■ Another issue raised concerning Briggs' testimony relates to a conversation he had with Zielinski. Briggs testified that he met with Zielinski on November 10, 1973 at Zielinski's restaurant in an effort to consummate the sale of the stolen goods. Regarding that conversation Briggs testified as follows:

"We was talking about the horse racing and how things were going, betting and things. We got to talking about trucks and he wanted to know what kind of engine I had in the truck. I told him it was a Detroit deisel [sic], and he said that he made thousands of dollars, in his earlier years in the service, stealing engines and generators and selling them."

Upon hearing this Zielinski's attorney promptly objected. The district court sustained the objection and instructed the jury to disregard the comment. Defense counsel then moved for a mistrial. The district court denied his motion.

Zielinski now argues that the testimony was inadmissible and so highly prejudicial that the trial court erred in not granting a mistrial. We do not agree. While we do agree that the testimony was inadmissible since its probative value was outweighed by its prejudicial effect and its remoteness in time (some 30 years before), we cannot hold that the district court acted improperly. On the contrary, when faced with the issue as raised by the defendant's objection, the district court correctly sustained the objection and immediately instructed the jury to disregard it. In light of all the evidence heard in this case we cannot say that the prejudice the defendant suffered was so great as to deny him a fair trial and require a reversal of his conviction.

■ The final issue raised concerning the testimony of Briggs involves his cross-examination.

On direct examination by the government Briggs testified as to his involvement in other interstate thefts. One case resulted in a plea of guilty, the other case was still pending at the time of this trial.

Upon cross-examination by the defendants the district court prohibited defense counsel from going into details of the conviction and pending charge. As is evidenced in the record, the district court felt the details of these other thefts were irrelevant to the present case.

The defendants argue that the district court erred in restricting the cross-examina-

tion in this fashion. They cite Rules 404(b), 406 and 608(b) of the Federal Rules of Evidence as authority for the admission of this line of cross-examination.

Even assuming arguendo that this evidence could be properly admitted under the rules cited its ultimate admission still rests within the sound discretion of the district court under Rule 403. Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Considering a trial of this length, we cannot hold that the district court abused its discretion in limiting the cross-examination of Briggs. The jury was aware of Briggs' involvement in other interstate thefts as a result of the government's direct examination. It was not error for the district court to exclude the details of these other incidents which it felt irrelevant to the present case.

III. *The District Court's Instructions to the Jury*

Both defendants contend the district court erred in refusing to give specific instructions each had tendered regarding specific intent, knowledge and wilfulness.

 It should be noted at the outset that the district court is not obligated to give instructions in the form and language requested by counsel, Seventh Circuit Judicial Conference Committee on Jury Instructions, reported at 33 F.R.D. 523, 534 (1963). As the United States Court of Appeals for the Second Circuit has said, "If a charge is substantially accurate, it is not error for the trial judge to refuse to use the language submitted by counsel." *United States v. Sacco*, 436 F.2d 780, 783 (2d Cir.1971).

 Therefore, in reviewing the district court's refusal to give specific instructions this court must examine the instructions given in order to determine whether the jury was adequately apprised of the criminal involvement necessary to support a finding of guilt.

 The district court first instructed the jury concerning the applicable portions of Title 18, United States Code, Sections 659 and 371. With regard to Section 659, the court stated:

"Whoever has in his possession any goods or chattels, moving or which are part of or which constitute an interstate shipment of freight; knowing the same to have been embezzled or stolen shall be guilty of a crime against the laws of the United States."

The district court later continued:

"So I have read you two statutes. The first is one that makes it a crime to possess goods stolen from an interstate shipment, knowing the goods to have been stolen. And the second statute is the conspiracy statute which makes it a crime to conspire to violate any law of the United States. To constitute a crime, there must be joint operation of two essential elements. An act forbidden by law and an intent to do the act. Before a defendant may be found guilty of a crime, the prosecution must establish beyond a reasonable doubt that under the statute defined in these instructions, defendant was forbidden to do the act charged in the indictment and that he intentionally committed the act.

The word 'knowingly', as used in the crime charged, means that the act was done voluntarily and purposely. Knowledge may be proven by a defendant's conduct and by all of the facts and circumstances surrounding the case. No person can intentionally avoid knowledge by closing his eyes to facts which should prompt him to investigate.

The defendants are charged with the crime of possessing property stolen from an interstate shipment. To convict the defendants of this offense, the government must prove, beyond a reasonable doubt, the property was stolen from an interstate shipment and that the defendants possessed the property with knowledge that it was stolen."

Upon examination of all the instructions and these in particular we cannot say that the jury was inadequately apprised of the elements of the crime and the government's burden in proving them.

■ Zielinski and Zarattini argue, however, that the district court should have given an instruction on specific intent and the failure to do so amounts to error. We cannot agree. Neither defendant has cited any authority which supports his contention that § 659 of Title 18 of the United States Code, a crime of receiving stolen property knowing it to be stolen, is a specific intent offense. The crime of receiving stolen property requires only knowledge, knowledge that the goods were stolen. Specific intent is not required under the statute.

■ Additionally, Zielinski and Zarattini contend a specific intent instruction was required for the conspiracy count. We find no merit in this contention. The mental state required for a conspiracy conviction is no greater than that necessary to commit the underlying substantive offense. As the Second Circuit noted in *United States v. Mauro,* 501 F.2d 45 (2d Cir.1974):

"There is no rule that the criminal intent required to satisfy a conviction of conspiracy to violate a statute must be greater than that necessary to commit the substantive crime. It cannot be less, but it need not be more."

See also, *United States v. Feola,* 420 U.S. 671, 696, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1958).

[17] Since the offense of receiving stolen property, knowing it to be stolen, does not require specific intent, than the offense of conspiring to do so requires no more.

Both defendants also assign as error the district court's definition of "knowingly" and "wilfulness". These arguments are meritless.

■ In defining knowledge the district court used La Buy 4:05. This was an adequate definition. Likewise, when viewing the instructions as a whole, the concept of wilfulness is sufficiently expressed in order to encompass the defendants' theory of good faith. Further, there is no authority which indicates that the receipt of stolen property must be knowing and wilful. Section 659 of Title 18 of the U.S.Code does not use the term wilfulness when describing the offense of receiving stolen property. Therefore, the failure to give a definition of wilfulness was not error.

■ Zarattini also argues that knowledge that the stolen goods were taken from an interstate shipment is an element of the offense under § 659 and further the failure to instruct accordingly constituted error. This argument is groundless. The law of this circuit is clear and in accord with considerable authority which holds that the interstate commerce element of § 659 is merely a jurisdictional requirement. A defendant need not know that the stolen property which he received was stolen from an interstate shipment. He need only know that the property he received was stolen. *United States v. Allegretti,* 340 F.2d 243 (7th Cir.1964), reh. den. 340 F.2d 254 (7th Cir.1964), cert. den., 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433 (1965), reh. den., 381 U.S. 956, 85 S.Ct. 1800, 14 L.Ed.2d 728 (1965). See also, *United States v. Houle,* 490 F.2d 167 (2d Cir.1973), cert. den., 417 U.S. 970, 94 S.Ct. 3174, 41 L.Ed.2d 1141 (1974); *United States v. Tyers,* 487 F.2d 828 (2d Cir.1973), cert. den., 416 U.S. 971, 94 S.Ct. 1995, 40 L.Ed.2d 560 (1971); *United States v. Allegrucci,* 258 F.2d 70 (3rd Cir. 1958).

■ The defendant, Zarattini, also argues that the district court's instruction regarding the inference that may be drawn from the unexplained possession of recently stolen property was improper because it, he argues, shifted the burden of proof to him. We find no merit to his argument. As the Supreme Court stated in a similar case involving recently stolen mail:

"Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere

massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination." *Barnes v. United States,* 412 U.S. 837, 847, 93 S.Ct. 2357, 2363, 37 L.Ed.2d 380 (1973).

Additionally, addressing itself directly to the challenged inference, the court stated:

"In the present case we deal with a traditional common-law inference deeply rooted in our law. For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. James Thayer, writing in his Preliminary Treatise on Evidence (1898), cited this inference as the descendant of a presumption 'running through a dozen centuries.' *Id.* at 327. Early American cases consistently upheld instructions permitting conviction upon such an inference, and the courts of appeals on numerous occasions have approved instructions essentially identical to the instruction given in this case. This longstanding and consistent judicial approval of the instruction, reflecting accumulated common experience provides strong indication that the instruction comports with due process." *Id.* at 843, 844, 93 S.Ct. at 2362 (footnotes omitted)

Ultimately the court held that the inference satisfied the requirements of due process. *Id.* at 846, 93 S.Ct. 2357.

IV. *The Evidence*

█ Both defendants raise several issues concerning the evidence. The first of these alleges that the misrepresentation of the evidence by the government in cross-examination and in closing argument constitute plain error. We do not agree. Viewing the trial in its entirety the infrequent and unintentional misstatements of evidence certainly cannot be held to constitute plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. The second issue raised in this regard concerns the sufficiency of the evidence. Both defendants

maintain the evidence was insufficient to support their convictions.

█ When an attack is made upon the sufficiency of the evidence the evidence must be viewed in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Furthermore, the jury's verdict must be sustained if there is substantial evidence to support it. *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Isaacs,* 493 F.2d 1124, 1146 (7th Cir.1974), cert. den., 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

█ With this in mind and upon an examination of the whole record there was substantial evidence upon which the jury could support its finding of guilt. While there may exist discrepancies and inconsistencies in the testimony and in the evidence, these are best left to the jury for their resolution.

Therefore, in conclusion and in light of all the foregoing, the convictions of Leo Zarattini and Anthony Zielinski must be, in all respects, affirmed.

AFFIRMED.