UNITED STATES of America, Plaintiff,

v.

GARY D. WILLIAMS, Sheila J. Williams, Defendants.

Nos. IP 91–145–CR–01, IP 91–145–CR–02.

United States District Court, S.D. Indiana, Indianapolis Division.

April 9, 1992.

Cale J. Bradford, Melanie C. Conour, Asst. U.S. Attys., Indianapolis, Ind., for plaintiff.

Scott E. Shockley, DeFur Voran Hanley Radcliff & Reed, Muncie, Ind., Bradley L. Williams, Ice Miller Donadio & Ryan, Indianapolis, Ind., for defendants.

## MEMORANDUM ENTRY DISCUSSING ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DISCOVERY

TINDER, District Judge.

This cause comes before the Court on Defendants' Gary D. Williams and Sheila J. Williams joint motion to compel discovery. On October 30, 1991, this Court entered a preliminary order providing for discovery pursuant to applicable rules, statutes, and law. Defendants now request this Court to order the Government to produce specific items to supplement that previous order. For the reasons stated below, Defendants' motion is hereby GRANTED in part and DENIED in part.

### BACKGROUND

On October 30, 1991, a grand jury issued a ten-count indictment alleging that the Defendants knowingly and wilfully conspired to violate Title 18, United States

Code, sections 2 and 1956(a)(1)(B)(i), Title 31, United States Code, section 5322(a) and 5324(3) and Title 31, Code of Federal Regulations, section 103.53. The indictment concerns the Defendants allegedly receiving money, derived from an illegal source, to secure a bail bond. The indictment alleges that the Defendants knew that the money was from an illegal source and that the Defendants willfully conspired to hide the source of the funds.

Immediately after the indictment was issued, this Court issued a preliminary order containing discovery requirements for each party. The Defendants have now filed this motion to compel discovery which is comprised of nine specific requests for materials.

## DISCOVERY IN CRIMINAL PROCEEDINGS

Pre-trial discovery in criminal prosecutions is authorized by Federal Rule of Criminal Procedure 16. This rule provides the only mechanism for either the defendant or the government in a criminal case to procure information held by the opposing party prior to trial. Once the trial begins, the defendant may invoke the Jencks Act, 18 U.S.C. § 3500, which requires the government to produce "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The Jencks Act requires the production of any statement of any witness "[a]fter a witness called by the United States has testified on direct examination." 18 U.S.C. § 3500(a). Accordingly, a defendant has no right, statutory or otherwise, to pre-trial discovery of witness statements.

Beyond the statutory framework of discovery, the doctrine of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), imposes Constitutional significance upon the actions of the government during a criminal prosecution. In *Brady*, the Court held that due process requires that the prosecution disclose to the accused any evidence which is favorable to his defense. *Id.* at 87, 83 S.Ct. at 1196–97. Although *Brady* imposes a Constitutional duty on the prosecution, "[t]here is no constitutional right to discovery in a criminal case, and *Brady* did not create one...." *Weatherford v. Bursey*, 429 U.S. 545, 560, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court discussed the *Brady* rule and stated:

> We are not considering the scope of discovery authorized by the Federal Rules of Criminal Procedure, or the wisdom of amending those Rules to enlarge the defendant's discovery rights. We are dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution.

*Id.* at 107, 96 S.Ct. at 2399. *Brady* merely creates a remedy which is implicated if the prosecution violates an accused's rights under fundamental due process:

> [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilty or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* 373 U.S. at 87, 83 S.Ct. at 1196–97. Although the standard practice by defendants is to request that the government produce all "Brady Materials", such a request is merely a statement of the duty which befalls the prosecution.

██ Lastly, a court has a certain inherent authority to order and supervise discovery in a criminal case above and beyond any of the mentioned rules. In *United States v. Jackson*, 508 F.2d 1001 (7th Cir. 1975), the Court of Appeals held that a trial court has the "inherent power, exercisable under appropriate circumstances, to assure the proper and orderly administration of criminal justice." *Id.* at 1007.[1] This authority has been repeatedly reaffirmed as in *United States v. Mitchell*, 778 F.2d 1271

---

1. In *Jackson,* the district court ordered the Government to disclose its witness list prior to trial. The Court of Appeals affirmed the order, not as within any discovery rule or statute, but as an exercise of the district court's inherent authority. *Jackson,* 508 F.2d at 1006.

(7th Cir.1985), where the Court of Appeals stated "this Court is mindful that the decision whether to grant or deny a motion for discovery is within the district judge's discretion." *Id.* at 1276.

Three of these doctrines, Fed.R.Crim.P. 16, the Jencks Act, and the court's inherent authority, constitute the foundation of the law of criminal discovery in the federal courts. They are supplemented by the rule of *Brady* which defines the Government's duty to produce favorable information in criminal prosecutions. The Defendants' discovery requests must be analyzed in light of these rules to determine the appropriate disposition.

## DISCUSSION

### Request No. 1

■ Defendants' first request seeks:

Any relevant written or recorded statements or copies of statements made by the defendant, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government. This request calls for discovery of written or recorded statements and recordings of defendant's [sic] conversations by any means of mechanical recordation or electronic surveillance, whether made before or after arrest and/or indictment and whether or not in response to interrogation. The term "statement" is not limited to verbatim recordings and transcriptions, but also includes handwritten notes, interview memoranda, reports of investigation, and administrative pages.

Defendants assert as the basis of this request Fed.R.Crim.P. 16(a)(1)(A). Over the Government's denial, the Defendants claim that two such statements must exist. First, the Defendants believe the "defendants were interviewed by arresting officers in route to the jail and their statements should have been preserved." Second, Defendants assert that an Internal Revenue Service Special Agent, Pat Hinkle, may have conducted an interview from which a statement was taken.

In the initial court order entered on October 30, 1991, this Court directed the government, *inter alia*, to:

(a) Permit the defendant(s) to inspect and copy or photograph: any relevant written or recorded statements made by the defendant(s) ... within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant(s) whether before or after arrest in response to interrogation by any person then known to the defendant(s) to be a government agent.

Further, this duty to disclose was not intended to be limited to pre-trial proceedings, but to extend throughout the proceeding. The Court Order states:

If prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, such party shall promptly notify the other party or that other party's attorney or the court of the existence of the additional evidence or material.

The government was given an order at the initiation of the prosecution which continues until the trial is complete. This order was substantially similar to the language of Rule 16(a)(1)(A) which the Defendants cite as authority for their discovery request. Because this Court has already ordered discovery to the extent permissible under current law, the issue is whether the Government is complying with the initial order.

Rule 16 provides a remedy for a violation of discovery orders:

If at any time during the course of the proceedings *it is brought to the attention of the court* that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such

other order as it deems just under the circumstances.

Fed.R.Crim.P. 16(d)(2) (emphasis added). Accordingly, the moving party bears the burden to bring a discovery failure "to the attention of the court." Determination of whether the movant satisfies this burden is left to the discretion of the trial court. *United States v. Paiz*, 905 F.2d 1014, 1027 (7th Cir.1990).

■ Defendants merely assert their belief that additional statements exist. Although they state with particularity two different statements believed to exist, they offer no evidence from which the Court could find that the statements do indeed exist.[2] The Government states that they have produced all material required by order of this Court and Rule 16. However, the Government contends that Rule 16(a)(1)(A) only requires discovery of statements made "in response to interrogation by a person known to the defendant as a government agency" and that "[t]here is no authority for the defendant's request for non-interrogation statements." In this assertion the Government is incorrect.

Rule 16(a)(1)(A) states, in relevant part: Upon request of a defendant the government shall disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government.

Fed.R.Crim.P. 16(a)(1)(A). This portion of the rule is unequivocal and does not limit the discovery of statements to those made in response to interrogation. It is noted, however, that Rule 16(a)(1)(A) also provides:

[T]hat portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in re-

sponse to interrogation by any person then known to the defendant to be a government agent.

*Id.* Thus, if a defendant seeks to discover oral statements which are part of a written record, such as an agent's case report, such statements must have been made in response to interrogation by a government agent. But the first-quoted section of the rule does not impose such a qualification on "any relevant written or recorded statements made by the defendant." There is no basis to support the government's assertion that a defendant may not discover his written statements unless those statements were made in response to interrogation. Under Rule 16(a)(1)(A), a category of defendants' statements may exist which are discoverable regardless whether such were given in response to interrogation, that is, "any relevant written or statements made by the defendant(s)." There may also be a second category of defendants' statements which are not discoverable unless made in response to interrogation by a known government agent. Thus, the assertion by the government that only statements made in response to law enforcement interrogation are discoverable is unfounded.

However, as indicated above, the defendants have failed to produce any evidence to persuade this court that discoverable statements exist. Absent a more substantial evidentiary showing that statements which fall within Rule 16(a)(1)(A)'s umbrella exist, this court will take no further action and Defendants' Request No. 1 will be DENIED. The Order of October 30, 1991 remains effective as does the Governments's continuing duty to disclose information which falls within either the pretrial order or Fed.R.Crim.P. 16.

### *Request No. 2*

■ Defendants' second request asks the Government for:

The substance of any oral statements that the government intends to offer in evidence at the trial allegedly made by

---

**2.** For example, if the defendants were questioned en route to the jail or were otherwise interviewed, their affidavits to that effect would have been relevant evidence to support this request.

the defendants or co-defendants or alleged co-conspirators whether indicted or not. The government is requested to conduct a conscientious effort to determine whether any individuals acting on behalf of the Government are aware of any other oral statements purportedly made by the defendants or their co-defendants or alleged co-conspirators. This request also calls for the discovery of the time, place, and circumstances of such statements.

Although this request is similar to Request No. 1, Defendants do not seek to discover statements which they personally made, but statements of coconspirators or codefendants.[3] In support of this request Defendants again offer Federal Rule Criminal Procedure 16(a)(1)(A) for its provision requiring the disclosure of statements made by a defendant. The Government responds by stating it will disclose any coconspirator's statements to the defendants "if warranted".[4] The issue before the Court is whether the language of Rule 16(a)(1)(A) can be fairly read to include the statements of a coconspirator or codefendant within the definition of a defendant's own statements. If so, then the statements are discoverable under Rule 16(a)(1)(A) prior to trial unless those statements would fall within the protection of the Jencks Act.[5] If the coconspirator statements are not incorporated into Rule 16(a)(1)(A), the Defen-

dants will be able to discover the statements only through the Jencks Act.

■ The language of Federal Rule of Criminal Procedure 16(a)(1)(A) specifically states "any relevant written or recorded statements made by the defendant." Whether the statement of a coconspirator or a codefendant is a statement "made by the defendant" and discoverable under Rule 16 has not been directly decided by the Seventh Circuit. In *United States v. Disston*, 612 F.2d 1035 (7th Cir.1980), the court considered whether the statement of a codefendant was discoverable under Rule 16 and stated:

> Rule 16(a) applies only to statements of the defendant. While we have occasionally held that statements of codefendants may be produced under Rule 16(a), we have expressly stated that it is a matter left to the trial judge's discretion.

*Id.* at 1037–38 (citations omitted). The meaning of these words seems clear. First, that Rule 16(a)(1)(A) does not apply to statements other than those made by a defendant, and, second, that the district court has the inherent authority to order discovery beyond that authorized by Rule 16.[6] Accordingly, coconspirator statements may be discovered prior to trial only if the court orders them to be disclosed in the exercise of its discretion.[7]

---

**3.** A statement made by a coconspirator not in furtherance of the conspiracy would not be discoverable even under a liberal interpretation of discovery rules. Only statements in furtherance of the conspiracy are not hearsay under Fed. R.Evid. 801(d)(2)(E). Accordingly, there is little risk of a statement not in furtherance of the conspiracy being imputed to a coconspirator. *See United States v. Santiago*, 582 F.2d 1128, 1130–31 (7th Cir.1978).

**4.** The Government states that "[p]rior to the trial in this cause the Government, if warranted, will file its proffer in Support of Admissibility of the Co–Conspirator's Declarations. Statements made by the defendants and others in furtherance of the conspiracy, if any, will be disclosed in said Proffer." This seems to suggest that the Government will disclose the requested statements only if they are to be introduced in evidence.

**5.** Seemingly, the parties dispute is not whether the Government will divulge the statements of coconspirator, but rather, when the Government

will make the disclosure. The Defendants would prefer the statements now rather than immediately prior to trial.

**6.** The two cases cited by the *Disston* court are vague but support this interpretation. In *United States v. McMillen*, 489 F.2d 229 (7th Cir.1972), the Court of Appeals issued a writ of mandamus requiring the district court to order the Government to disclose the statements of non-testifying co-defendants. In *United States v. Zarattini*, 552 F.2d 753 (7th Cir.1977), *cert. denied*, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977), the appeal court upheld the trial court's decision not to require Government disclosure of a non-testifying co-defendant statements. In so holding, the court declined to "now extend [*McMillen*] to make what was discretionary now mandatory." *Id.* at 758.

**7.** Although our circuit has failed to directly address the issue, other Courts of Appeals have held that *Fed.R.Crim.P.* 16(a)(1)(A) does not allow the discovery of statements other than those

The conclusion that Rule 16(a)(1)(A) does not authorize discovery of statements made by persons other than the defendant is further supported by the amendment to Rule 16 which became effective in December of 1991. If the Advisory Committee on Criminal Rules, the Supreme Court, or Congress had intended for Rule 16(a)(1)(A) to apply to statements made by persons other than the defendant, such a provision could have easily been incorporated into the amended rule. At the time the amendments to the rule were being considered, several courts had ruled that coconspirator or codefendant statements were not discoverable under Rule 16. *See* note 8, *supra.* Thus, the interpretation being given to the predecessor Rule 16(a)(1)(A) was well known and the rule could have been modified to clearly allow the discovery of coconspirator statements. This inaction is significant and indicates the drafters of the amendment to Rule 16(a)(1)(A) did not intend to expand the discovery available to a defendant under Rule 16(a)(1)(A) in this regard. Accordingly, Rule 16(a)(1)(A) is inapplicable to the discovery of statements made by coconspirators or codefendants.

■ If Rule 16 does not provide a basis for the discovery of the statements, the only possibility remaining is for the Court to authorize discovery through an exercise of its inherent authority. Little guidance exists on the factors a court should consider when deciding whether to allow the discovery of materials outside of Rule 16. It is completely clear, however, that the Court's authority is limited by the Jencks Act, 18 U.S.C. § 3500 (1988). Under the Act, the court may not require the disclosure of a testifying Government witness until that witness has testified on direct exam. *Id.* Accordingly, a court does not have the authority to order the disclosure of statements of coconspirators who are to be Government witnesses.

■ The Defendants do not clearly articulate a theory in support of their discovery request for statements of coconspirators. Even so, it is apparent that the mere fact that a coconspirator's statements may be imputed to the Defendant for purposes of the hearsay rule, Fed.R.Evid. 801(d)(2)(E) [8], indicates both the relevance and importance of such statements to the preparation of the Defendants' defense.

Against the Defendants' interest must be weighed the possible prejudice and unfairness to the Government as well as the general reluctance of federal courts to extend the established rules of criminal discovery. The Government has conceded that it will disclose statements made by coconspirators prior to the trial if it intends to introduce the statements as evidence. Given this concession and the absence of a compelling reason to disclose the coconspirator statements at this time, the Defendants have failed to show sufficient harm or prejudice to their interests to warrant a discovery order pursuant to the discretionary authority of this court.[9] Further, the Defendants have not indicated any attempt to exhaust alternative means of procuring the statements.[10] It must be reemphasized that the Government is not required to

---

of the Defendant. *See United States v. Mayberry,* 896 F.2d 1117, 1122 (8th Cir.1990); *United States v. Tarantino,* 846 F.2d 1384, 1417–18 (D.C.Cir.), *cert. denied* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988); *In re United States,* 834 F.2d 283, 287 (2d Cir.1987); *United States v. Roberts,* 811 F.2d 257 (4th Cir.1987); *United States v. Orr,* 825 F.2d 1537, 1541 (11th Cir.1987).

**8.** Declaring that a statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E).

**9.** Each request for statements of non-testifying coconspirator or codefendants will require a careful weighing and sifting of the facts. Only in this way does the Court carefully guard the discretion with which it is vested.

**10.** It is unknown whether the Defendants' even asked those named in the indictment as coconspirators, through counsel, of course, to share their individual statements or the discovery the government has provided. It is conceivable that Rule 16 or the *Brady* rule has resulted in a disclosure by the government of such statements to others indicted as conspirators. The court is unaware of any factor preventing the defendants in this case from cooperating with each other, again, through counsel, in defense against the allegations of the indictment.

disclose any coconspirator statement of a testifying witness until that witness has testified on direct examination. This ruling satisfies the explicit mandate of the Jencks Act. Based upon this balancing of the competing interests, Defendants' Request No. 2 will be DENIED.

### Request No. 3

Defendants' third request asks that the Court compel the Government to provide:

All books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, that are within the possession, custody, or control of the government and (1) that are intended for use by the government as evidence-in-chief at the trial, or (2) that were obtained from or belong to the defendant.

This request is in substance identical to Fed.R.Crim.P. 16(a)(1)(C) and it is not surprising that Defendants cite that provision in support of their request. Without doubt Rule 16(a)(1)(C) grants the Defendant exactly that which it requests. Consequently, this Court ordered the Government to comply with Rule 16(a)(1)(C) in the pre-trial order issued on October 30, 1991. Again, the Defendants fail to indicate any failure by the Government to comply with the rule. Instead, Defendants merely request that which has already been granted. Absent a showing by the Defendants that the Government is not complying with the October 30, 1991 order of this Court, their Request No. 3 will be DENIED.

### Request Nos. 4 and 5

■ Defendants' fourth and fifth discovery request are considered together because they ask this Court for the same result: the discovery of all exculpatory evidence which the Government possesses under the doctrine of *Brady v. Maryland.* The fifth request by Defendant is essentially the standard request for all "Brady materials" which the Government possesses:

All material that is exculpatory or relevant to impeachment of any witness, or that tends to establish a defense, in whole or in part, or that would help defendant avoid conviction or mitigate punishment, in whatever form those materials are maintained, whether or not recorded, written, or otherwise documented, which are in the government's possession, custody, or control or otherwise known to the government. The materials requested include but are not limited to all documents or information responsive to the specific requests enumerated in Request No. 4 above (hereby incorporated by reference).

In request number four, the Defendants expand upon the general *Brady* material request stated in their request number five and ask for specific materials:

All documents that are material to the preparation of a defense, including but not limited to:

a. Statements made by any person interviewed by the government or testifying before the grand jury, to the effect that the person was not aware of the source of funds used as bond collateral or bond premiums.

b. Statements made by any person interviewed by the government or testifying before the grand jury, to the effect that any person other than defendants Gary D. Williams or Sheila J. Williams instructed or assisted that person in obtaining funds or a cashiers check used as bond collateral or bond premium.

c. All plea agreements, formal or informal offers and/or grants of immunity, agreements or promises to seek modification of sentence, letters to Bureau of Prisons officials, or any other documents reflecting favorable treatment afforded any person who is or may be a witness called by the government in this case, whether before the grand jury or at trial.

d. All reports of polygraph examiners pertaining to any person who is or may be a witness called by the government in this case, whether before the grand jury or at trial.

e. All statements or other information pertaining to the credibility of any person who is or may be a witness

called by the government in this case, whether before the grand jury or at trial.

　　f. All written statements referred to in paragraph 12(a) of the Danny Slaven plea agreement.

　　g. All communications, written or oral, with any state or local law enforcement personnel pertaining to the prosecution of this case.

Defendants assert that Fed.R.Crim.P. 16(a)(1)(C) and the rule of *Brady* support this discovery request. Defendants identify several particular items which they allege the Government possesses but has failed to disclose, including plea agreements and grants of immunity. The Government argues that such broad reaching discovery is beyond the doctrine of *Brady v. Maryland,* as interpreted in the subsequent case of *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

　In *Agurs,* the Supreme Court stated that: If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice ... The Constitution surely does not demand that much ... The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.

*Agurs,* 427 U.S. at 110, 96 S.Ct. at 2400. Accordingly, the *Brady* doctrine does not require the Government to disclose all in-formation which it possesses relative to a prosecution to satisfy due process. Instead, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97.[11]

　The Government acknowledges its continuing duty to disclose exculpatory evidence to the Defendants. In that sense, the Government is fully complying with Defendants' fifth request. The Defendants' have not offered evidence of any non-compliance on the part of the Government. Thus, there is no reason to compel the discovery requested in Request No. 5. In essence, what the Defendants seek is for this court to cull through the Government's files to determine if any evidence exists which is exculpatory under *Brady.* Besides the extraordinary amount of time and resources such a task would consume, this court is not in a position, at this time, to determine which evidence would be subject to disclosure under the *Brady* doctrine. Not until the trial has begun and evidence is presented will the court have a clue about the impact of various materials which the Government possesses.[12] This rationale further indicates why the rule of *Brady* is not a rule of discovery, but a doctrine of constitutional error to be raised when specific evidence is withheld which deprives the Defendant of a fair trial.

　As stated above, the rule of *Brady* is not a rule of discovery. Even if the Government was not divulging all exculpatory ma-

---

**11.** *Brady* considered the situation of a defendant making a specific request for a certain piece of exculpatory information. However, *Agurs* expanded the holding in *Brady* to apply due process constraints to the situation in which the defendant makes either a general request for *Brady* materials or no request at all. *Agurs,* 427 U.S. at 106–107, 96 S.Ct. at 2398–99.

**12.** The Court can envision some circumstances where an *in camera* inspection of a piece of evidence possessed by the Government would be appropriate to determine if the evidence is exculpatory. One example would be when a defendant presents the court with reasonably specific information to demonstrate that it is probable that the Government possesses materi-al which is both exculpatory and not disclosed in a timely manner. Another example would be when the Government proffers certain materials to the court for a *Brady* determination when it is uncertain about whether exculpatory information could result from its disclosure to the defendant. However, if a mere request for such information would trigger the court's inspection of government files, the court's role in the administration of justice would be vastly changed. If that were the law, courts would be expected to review government files in all cases to insure compliance with the *Brady* rule. No case in the *Brady* progeny suggests that such a procedure is appropriate or necessary.

terial in its possession, the proper remedy for the Defendant would not be a discovery order by this Court. Rather, the withholding of such exculpatory information would possibly "violat[e] [the prosecutor's] constitutional duty of disclosure" and "result in a denial of the defendant's right to a fair trial." *Agurs,* 427 U.S. at 108, 96 S.Ct. at 2400. "There is nothing in *Brady* or *Agurs* to require that such disclosures be made before trial." *United States v. McPartlin,* 595 F.2d 1321, 1346 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). If the violation is sufficiently serious, the proper remedy is a new trial. *Id.* at 109–10, 96 S.Ct. at 2400–01.

Accordingly, *Brady* is not authority for the Defendants to discover the specific information requested in their Request No. 4 prior to trial. In *McPartlin, supra,* the defendants claimed that the Government's failure to disclose, prior to trial, certain exculpatory information violated the *Brady* rule and, consequently, deprived them of due process. The Court of Appeals found this theory to be a "misinterpretation of *Brady* as a constitutional mandate for pretrial discovery", *McPartlin,* 595 F.2d at 1346, and held that the later divulging of the information satisfied due process. *Id.* Thus, unless the Defendants' are able to indicate other authority for the discovery of that information outlined in Request No. 4, their motion to compel must fail.

■ Defendants raise an alternative basis for the materials in Request No. 4, namely Fed.R.Crim.P. 16(a)(1)(C). This rule provides that:

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Fed.R.Crim.P. 16(a)(1)(C). Under this rule, the defendant is entitled to discover certain materials if they are either (1) material to the preparation of the defense, or (2) intended to be used by the government as evidence, or (3) were obtained from the defendant. However, the discovery under Rule 16(a)(1)(C) is modified and limited by Rule 16(a)(2), which states:

Except as provided in paragraphs (A), (B), and (D) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses except as provided in 18 U.S.C. § 3500.

Fed.R.Crim.P. 16(a)(2). Accordingly, each of Defendants' requests under Request No. 4 must be analyzed in light of both Rule 16(a)(1)(C) and Rule 16(a)(2).

Request 4(a) and 4(b) are related and seek to discover *Brady*-like materials in the form of statements made by persons testifying before the grand jury or interviewed by the government. Rule 16(a)(2) prevents the "discovery or inspection ... of statements made by government witnesses except as provided in 18 U.S.C. § 3500." Even if the statements satisfy one of the requirements of Rule 16(a)(1)(C), their discovery by the Defendants is still barred by Rule 16(a)(2) unless those witnesses will testify at trial. In that instance, the Defendants would be entitled to discover the witnesses' statements pursuant to the Jencks Act.

■ Request 4(c) asks the Court to compel the Government to disclose:

All plea agreements, formal or informal offers and/or grants of immunity, agreements or promises to seek modification of sentence, letters to Bureau of Prisons officials, or any other documents reflecting favorable treatment afforded any person who is or may be a witness called by the government in this case, whether before the grand jury or at trial.

Under Rule 16(a)(1)(C), the Defendants are entitled to discover this information, prior to trial, if it would be material to the preparation of the defendant's defense.[13] In their Motion to Compel, the Defendants state that "[i]n a case where the credibility of witnesses will determine the outcome, this information is essential to the defense." The Defendants have satisfied the Court that such plea agreements are "material" to their defense to require disclosure. This information would be essential to the cross-examination and impeachment of any Government witness to be called at trial.[14] However, Defendants reach too far by requesting these documents in relation to witnesses who only testified before the grand jury. A more specific showing of materiality would be required before the Court would grant discovery of information related to a grand jury witness.

Accordingly, Defendants' request 4(c) will be GRANTED as relevant to persons the Government intends to call as witnesses at trial. The request will be DENIED insofar as the materials requested relate to witnesses who only testified before the grand jury and whom the Government does not intend to call at trial. Further, the Government is not required to produce internal memoranda or other documents which are not permitted to be discovered by the explicit mandate of Fed.R.Crim.P. 16(a)(2).

■ In their request 4(d), the Defendants ask for "[a]ll reports of polygraph examiners pertaining to any person who is or may be a witness called by the government in this case...." Although Rule 16(a)(1)(C) could arguably allow the discovery of these polygraph test results, Rule 16(a)(2) explicitly prevents their discovery in this instance. Rule 16(a)(2) acts as an express limitation on the discovery available under Rule 16(a)(1)(C). In rele-

vant part, Rule 16(a)(2) prevents the discovery of:

> reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case.

Fed.R.Crim.P. 16(a)(2). The report of a polygraph examination is almost certainly to be made by a "government agent" and "in connection with the investigation or prosecution of the case." Thus, request 4(d) is not discoverable under Rule 16(a)(1)(C). Because the Defendants' have not offered any evidence to contradict this assumption, their request numbered 4(d) will be DENIED.

In request number 4(e), the Defendants again attempt to discover the statements of witnesses who "may be a witness called by the government in this case...." Again, as stated above, the Jencks Act expressly prohibits this Court from ordering pretrial discovery of statements of testifying witnesses. In fact, Rule 16(a)(2) reiterates this proposition by preventing any discovery pursuant to Rule 16(a)(1)(C) pertaining to "statements made by government witnesses or prospective government witnesses except as provided in [the Jencks Act]." Accordingly, Defendants' request number 4(e) will be DENIED.

■ The Defendants' ask, in their request number 4(f), for "[a]ll written statements referred to in paragraph 12(A) of the Danny Slaven plea agreement." However, the Defendants do not provide this Court with the Danny Slaven plea agreement from which to determine if Rule 16(a)(1)(C) is applicable. Without this information, this Court can neither determine the materiality of the written statements requested nor determine if Rule 16(a)(2) may prohibit their discovery. Accordingly, the Defendants' failure to provide sufficient informa-

---

13. This information is also paradigm *Brady* material as being relevant to the credibility and impeachment of government witnesses. However, as stated above, this Court does not view the *Brady* doctrine as a rule of discovery and will not order discovery based on that theory alone.

14. The rule of *Brady* may in fact require disclosure of impeachment materials of a Government witness. That debate has raged in other courts but is not presented here by the defendants' requests.

tion requires that their request number 4(f) be DENIED.

 Finally, in request number 4(g), the Defendants ask that the Government divulge "[a]ll communications, written or oral, with any state or local law enforcement personnel pertaining to the prosecution of this case." Even if this information could be construed as material for the purposes of Rule 16(a)(1)(C),[15] it surely is the exact information which Rule 16(a)(2) was designed to prevent from being discovered. In the Advisory Committee's notes to the 1974 Amendment, the language of Rule 16(a)(2) was indicated as being included "to make clear that the work product of the government attorney is protected". Fed. R.Crim.P. 16 (Notes of the Advisory Committee on the 1974 Amendment). Communications between state or local law enforcement and the attorney's for the Government would run close to invading this "work product" protection engendered by Rule 16(a)(2). Accordingly, because the information requested by the Defendants' has not been shown to be material, and because of the limits created by Rule 16(a)(2), Defendants' request number 4(g) will be DENIED.

These requests have been analyzed specifically in light of Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure. As such, this court makes no intimation as to the exculpatory nature of the requested information under the *Brady* doctrine. Although a number of the Defendants' requests have been denied under the rules of discovery, the Government may have a constitutional duty to divulge some of those materials. This court lacks sufficient information to evaluate the *Brady* aspects of the Government's nondisclosures at this point in time.

*Request No. 6*

 Next, the Defendants ask for: Any chart, summary, or calculation that the government intends to offer in its case-in-chief, and all writings, recordings, or other information on which such charts, summaries, or calculations are based.

The Defendants offer as the basis for this request Federal Rule of Evidence 1006, which allows a party to present distilled versions of voluminous evidence.[16] That rule further requires that the evidence which serves as a basis for the distillation be made available to the opposing party. Fed.R.Evid. 1006. Although this rule of evidence governs the presentation of evidence during trial, it is not a rule of discovery. The Rule does not require that production of the originals or copies of the underlying documents, recordings or photographs for examination or copying occur prior to trial. In fact, the Rule specifies that the court may order the production of these items in court, presumably during the trial. All that is required is that the time and place of production shall be reasonable. As indicated at the outset of this memorandum, only four bases of discovery and disclosure exist in federal criminal procedure. The Rules of Evidence are not one of those bases. Federal Rule of Evidence 1006 does not grant a criminal defendant authority to discover information prior to trial, but merely regulates the presentation of summary evidence throughout the proceedings. The Defendants have not presented any information to this court to support a belief, or even a suspicion, that the Government intends to utilize a chart, summary or calculation in evidence at trial. Consequently, their naked request lacks serious merit. It is not surprising that their memorandum fails to cite authority for the proposition that the Federal Rules

---

**15.** A conclusion which this Court is completely unable to reach because of the Defendants' failure to present adequate information indicating the "materiality" of the communications.

**16.** Fed.R.Evid. 1006 allows parties to introduce massive amount of evidence in alternative form: The contents of voluminous writings, recordings, or photographs which cannot conve-

niently be examined in court may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.
Fed.R.Evid. 1006.

of Evidence trump, or otherwise expand on, the Federal Rules of Civil Procedure—because there is no such authority for such a proposition. Because Federal Rule of Evidence 1006 has not been shown to be applicable, Defendants' Request No. 6 will be DENIED.

### Request No. 7

■ Defendants next ask that this court order the Government to produce:

All evidence of similar crimes, wrongs, or acts, allegedly committed by either defendant, upon which the government intends to rely to prove motive, scheme, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, including all documents relating to any such alleged "similar acts."

To support this request, the Defendants offer Federal Rule of Evidence 404(b) which regulates the use of evidence of other crimes, wrongs, or acts.[17] The rule, regarding the materials requested by the Defendants, requires the prosecution in a criminal case to "provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed.R.Evid. 404(b). The Government states that should it seek the admission of such evidence, "the defendants will be given reasonable notice of the Government's intent to use said evidence prior to trial." In essence, the dispute concerns the precise meaning of the term "reasonable notice" as used in Rule 404(b).

The purpose of the pre-trial notice requirement of Rule 404(b) is "to reduce surprise and promote early resolution on the issue of admissibility." Fed.R.Evid. 404(b)

(Notes of Senate Committee on the Judiciary on the 1991 Amendment). Further, no specific time limits are stated in the rule and instead "what constitutes a reasonable request or disclosure will depend largely on the circumstances." *Id.* Rule 404(b) clearly requires that the Government provide notice to the defendant in "advance of trial." *Id.* This Court could, and in certain circumstances may, undertake to weigh and evaluate each particular situation of 404(b) notice presented to determine the content of "reasonable notice." However, the need of a defendant to have notice that 404(b) evidence will be offered seems somewhat similar regardless of the particular case.

Because of this similarity, when a defendant requests the Government to provide the general nature of any evidence which the Government intends to admit for the purposes outlined in Rule 404(b), the Government shall give such notice to the defendant no later than ten days prior to start of the trial. By receiving notice of the general nature of 404(b) evidence ten days before trial, surprise is avoided and the defendant has an adequate opportunity to challenge the admissibility of the information. However, some cases might present facts which necessitate an earlier disclosure of the use of 404(b) evidence. In such a case, a defendant is free to offer to the Court any reason why a deviation from the presumptive ten-day rule is warranted.[18] If the Court finds that "reasonable notice" requires greater than ten days, the Court may order the Government to notify the defendant of the general nature of 404(b) evidence earlier than ten days before trial. Similarly, if the Court finds that less than ten days is sufficient or required by

---

**17.** This rule, as amended and effective December 1, 1991, states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial,

or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b).

**18.** Likewise, the Government may seek to convince the Court that pre-trial notice should be excused. Under rule 404(b), the Court may excuse pre-trial notice "on good cause shown." Fed.R.Evid. 404(b).

the circumstances of the case, a downward deviation from the presumptive notice is allowable.

 In the present case, the Defendants have requested that the Government provide the specific evidence which it intends to offer under Rule 404(b). Again, the Rules of Evidence are not rules of discovery. The purpose of the Rule 404(b) notice provision, to prevent surprise during trial, does not support providing a defendant with materials which the Government possesses and plans to offer at trial. Instead, the Defendants need only receive sufficient notice "to apprise the defense of the general nature of the evidence of extrinsic acts." Fed.R.Evid. 404 (Notes of Senate Committee on the Judiciary on the 1991 Amendment). Nothing in the rule indicates that the defendant is entitled to receive documents or other evidence from which the Government derives the prior bad act evidence. The Government merely need provide the Defendants with information sufficient to indicate the general nature of the evidence.[19] In this instance, the court was not presented with specific facts from which to determine what reasonable notice might entail. In the absence of such specific circumstances, only these general guidelines come into play.

With these specific limits, the Defendants' Request No. 7 will be GRANTED, and the Government is ordered to provide the Defendants notice, as defined above, of any evidence which they intend to introduce under Fed.R.Evid. 404(b) no later than ten days prior to the start of trial.

### Request No. 8

 In their eighth request, Defendants seek:

A list of the witnesses the government intends to call at trial, with any changes in the list of witnesses to be communicated as they are made. With respect to any expert witnesses the government intends to call, the name, address, qualifications, and subject of testimony of such expert, together with a copy of any report prepared by or for him or her, as well as copies of financial, accounting, scientific, technical, or other documents uses as backup by said expert.

The Defendants cite, as their sole authority for this broad request, the case of *United States v. Napue*, 834 F.2d 1311 (7th Cir. 1987). *Napue* held that:

Although the defendant in a criminal case has no right to a list of the government's witnesses to be called at trial, this court has held that a district court has the authority to require the government to provide the defendant with such a list.

 *Id.* at 1318 (citing *United States v. Jackson*, 508 F.2d 1001 (7th Cir. 1975)). The ability to order the disclosure of the Government's witness list is derived from the inherent authority of the court to conduct the criminal proceeding. *Id.; Jackson*, 508 F.2d at 1007. A defendant is not entitled to a list of the Government's witnesses as a matter of right. *United States v. Harris*, 542 F.2d 1283, 1291 (7th Cir.1976). In light of these general propositions, a district court must weigh all the circumstances before exercising its discretion to order the Government to produce a list of witnesses.

The Government opposes any order to provide the Defendants with a witness list. In support of this position, the Government quotes the legislative history of the 1975 amendments to Fed.R.Crim.P. 16, which states:

A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial. Discouragement of witnesses and improper contacts directed at influencing their testimony were deemed paramount concerns in the formation of this policy.

---

**19.** The notes of the Senate Judiciary Committee on the 1991 Amendment indicate that reasonable notice is a condition precedent to the admissibility of 404(b) evidence. If it is determined that the Government failed to comply with the notice requirements of rule 404(b), a court would seemingly have the discretion to refuse to admit such evidence.

H.R.Conf.Rep. No. 414, 94th Cong., 1st Sess. at 12 (1975). Although this statement is enlightening about the thoughts of the Congress regarding the scope of the Federal Rules of Criminal Procedure, it has little influence over the separate and distinct exercise of a court's inherent authority. Nonetheless, the statement raises the same issues which cause this Court to be reluctant to order the discovery of a witness list.

■ Two primary consideration militate against requiring the Government to produce a list of its witnesses. First, the disclosure of Government witnesses creates the possibility that the witnesses may be influenced or coerced prior to testifying. Second, a witness who knows that his or her name, address, and other vital information will be disclosed to the defendant may be more reluctant to testify on behalf of the Government. Because of these fears, a court should generally not order the disclosure of a witness list unless the defendant is able to offer some compelling reason for disclosure which outweighs these concerns. In this case, the Defendants have not satisfied that burden.

In this instance, the Defendants fail to offer any reason to override the concerns inherent in ordering the disclosure of the Government's witness list. In fact, the Defendants offer no reason at all to support their request. Defendants do not differentiate this case from the multitude of federal criminal prosecutions in which all defendants would like to have a list of the Government's witnesses. Without a particular showing of need, this Court will not order the Government to disclose a list of their witnesses. Accordingly, Defendants' Request No. 8 will be DENIED.

### Request No. 9

For their last request, Defendants request:

All records of electronic surveillance or consensual monitoring conducted involving any conversation in which either Gary D. Williams or Sheila J. Williams was a participant, whether or not the government intends to offer the information as evidence in its case-in-chief.

To support this request, the Defendants offer the case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny. The Government responds that "there is no evidence in this cause that is derived from electronic surveillance or consensual monitoring." Perhaps this response answers the Defendants' concerns. However, they continue to argue that want all information derived from electronic surveillance, including information which the Government does not intend to offer into evidence. It is not known by this court whether the Government's response means that there was no electronic surveillance or consensual monitoring, or if it means that there was some, and neither it nor matters derived from it are going to be offered into evidence. The equivocal nature of the Government's response leaves both possibilities alive. If there was none, there is simply nothing for the government to produce, and the issue is moot. However, in the absence of a more specific response from the Government, the court will assume that either monitoring or surveillance occurred but that nothing derived from those methods of investigation will be offered into evidence.

Defendants have correctly asserted that this issue is governed by the rule of *Brady.* As stated at length above, the Government may violate due process if it fails to disclose to the defense any exculpatory information which it possesses. However, *Brady* is not a rule of discovery. Because no specific rule of discovery is cited to support the Defendants' request, this Court will not order the Government to produce the information requested. Further, the Government acknowledges its continuing duty under *Brady* to disclose all exculpatory information. Accordingly, the discussion of Defendants' Request No. 2, *supra,* is directly applicable to this request. The Defendants' ninth request will therefore be DENIED.

### CONCLUSION

■ Although several of Defendants' requests have been granted, this Court is

mindful that criminal discovery, in general, is limited in the federal courts. Further, a thorough understanding of the doctrine of *Brady v. Maryland* exposes clearly that *Brady* is not a rule of discovery. Although a defendant's conviction may not stand if the government deprives the defendant of a fair trial, the evaluation of this deprivation can only be made by the court at a time when the relevance and exculpatory nature of the evidence is clearly visible. Because of this delicate application of the rule of *Brady*, many of Defendants' requests herein were erroneously supported with *Brady*. In all criminal prosecutions in the federal courts, the bases of discovery begin and end in the Federal Rules of Criminal Procedure and the Jencks Act, unless an extraordinary case requires the exercise of the court's inherent authority to require the production of things that the Rules and the Act do not. Nothing presented by the Defendants places this case in that rare category. A separate order issued in conjunction with this entry will formalize these rulings.