Arif DURRANI, Petitioner,

v.

The UNITED STATES of America,
Respondent.

No. CRIM. 3:86CR59(SRU).

United States District Court,
D. Connecticut.

Nov. 25, 2003.

---

Jeffrey A. Meyer, William J. Nardini, U.S. Attorney's Office–NH, New Haven, CT, for Plaintiff.

Charles W. Pieterse, Whitman, Breed, Abbott & Morgan, Greenwich, CT, Mark S. Zaid, Lobel, Novins & Lamont, Washington, DC, William J. Nardini, U.S. Attorney's Office–NH, New Haven, CT, for Defendant.

### *RULING*

UNDERHILL, District Judge.

In 1987, Petitioner Arif Durrani ("Durrani") was convicted of violating the Arms Export Control Act, 22 U.S.C. § 2778, and the accompanying International Traffic In Arms Regulations, 22 C.F.R. § 120 et seq., and was sentenced to a term of incarceration. Having fully served his sentence and been released from custody, Durrani brought the current petition for a writ of coram nobis or audita querela, seeking an order vacating his conviction. Alternatively, Durrani requests additional discovery to support his claim that he was shipping arms to Iran on behalf of the United States government. This is Durrani's fourth post-conviction attack on his sentence. The government moves to dismiss the petition, arguing that the claims are procedurally barred, untimely and meritless. On July 25, 2003, the court heard

oral argument on the current petition. For the reasons that follow, Durrani's motion to vacate his sentence and/or to seek additional discovery is denied.

## I. Background

Because the background to this case was thoroughly developed in the Second Circuit's decision affirming Durrani's conviction, *United States v. Durrani*, 835 F.2d 410 (2d Cir.1987), the court will discuss only the facts relevant to the current petition.

On October 8, 1986,[1] Durrani was charged with exporting arms without a State Department license.[2] Shortly thereafter, allegations began to surface that high-ranking United States government officials were involved in what came to be known as the Iran–Contra affair, a covert operation in which the United States government was selling arms to Iran in exchange for the release of American hostages. Before trial on the criminal charges against him, Durrani moved to dismiss the indictment, claiming that the government was selectively prosecuting violators of the licensing provision. In his motion to dismiss, Durrani did not allege that the government had requested his assistance in locating military parts. Rather, only after the release of the Senate Intelligence report on the Iran–Contra Affair, in January 1987, did Durrani raise for the first time that he was working in concert with the government.

At trial, Durrani argued that his actions derived from officially-sanctioned covert operations, and he was therefore exempt from any licensing requirements. Durrani claimed that he was working at the request of Manuel Pires ("Pires"), an international arms dealer, whom Durrani claimed was working for Lieutenant Colonel Oliver North of the United States National Security Counsel ("NSC"). Durrani argued that Pires, at the insistence of Colonel North, requested Durrani to locate missile parts to ship to Iran. The prosecution argued that Colonel North would not have requested Durrani, either directly or indirectly, to locate military parts for the United States government because the Central Intelligence Agency ("CIA"), not private parties, was in charge of obtaining all military parts for Colonel North. In addition, Charles Moyer of the CIA claimed the CIA had no record of an association with Pires or Durrani. On April 2, 1987, a jury found Durrani guilty on all three charges. On December 3, 1987, the Second Circuit affirmed the conviction. *United States v. Durrani*, 835 F.2d 410 (2d Cir.1987).

On July 15, 1988, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, as it was in effect at the time of the offense in this case, Durrani filed a motion for reduction of sentence. Durrani argued that "important new information regarding the role of private individuals in the Iran arms deals strongly suggests that the

1. On February 18, 1986, the government filed a superseding indictment to include charges of attempting to export arms without a State Department license and failing to register as an arms exporter with the State Department Office of Munitions Control.

2. "The Arms Export Control Act establishes the basic requirements for the sale and export of American-made military equipment and ammunition to foreign purchasers. Before a private exporter may sell any article contained on the [U.S. Munitions List] he must apply for an export license from the U.S. State Department's Office of Munitions Control. The exporter must include in the application a description of the arms, their ultimate destination, and their intended use. The Munitions Control Office then decides whether to grant the license based upon the information contained in the application. If an export license is granted, the exporter must present it to the Customs Service at the time of export." *Kuhali v. Reno*, 266 F.3d 93, 104 (2d Cir.2001) (citing *United States v. Schwartz*, 924 F.2d 410, 416 (2d Cir.1991)).

court may have been unduly and unnecessarily harsh in its assessment." Recognizing that a Rule 35(b) motion is "essentially a plea for leniency," the District Court (Judge T.F. Gilroy Daly) held that neither the submission by the parties nor the rest of the record suggests that Durrani should be entitled to any grant of leniency. "Quite the contrary, the record reveals that [the] defendant on several occasions has committed or has caused to be committed falsehoods in the pretrial, trial and post-trial proceedings in this matter, reflecting a complete disdain for the law and this Court." Accordingly, on May 23, 1989, Judge Daly denied Durrani's Rule 35(b) motion.

On March 4, 1990, pursuant to 28 U.S.C. § 2255, Durrani filed a *pro se* habeas corpus petition to vacate his conviction. On August 6, 1991, Durrani, with the assistance of counsel, filed an amended section 2255 petition, alleging that the government had withheld various forms of exculpatory material. Particularly relevant for purposes of this motion, Durrani alleged that agents or employees of the United States government knew at the time of Durrani's trial that the United States government, either directly or indirectly, involved private individuals, including Pires, in the procurement of military weapons for shipment to Iran. Judge Daly permitted Durrani time to accumulate evidence to support his section 2255 petition. In its attempt to comply with Durrani's document production requests, the government asked the Office of Independent Counsel ("OIC") to search its files for documents relevant to Durrani's request. On October 2, 1991, after an *in camera* review, Judge Daly ordered some of the OIC-produced documents to be disclosed to Durrani.

Despite repeated discovery deadline extensions, Durrani was unable to gather

sufficient evidence to support his claim that he was working in concert with the United States government. Accordingly, on May 21, 1992, Durrani moved for voluntary dismissal of his section 2255 petition claiming that he wanted to resolve his pending Immigration and Naturalization Services ("INS") proceedings prior to focusing on his section 2255 petition. After a hearing at which Durrani was present, Judge Daly granted the motion, ruling: "On consent of the government, counsel for the petitioner, and the petitioner himself and consistent with the Court's ruling in open court on this same date, the motion is hereby ORDERED dismissed without prejudice to renewal upon a filing, on or before, December 31, 1992, made in compliance with the appropriate rules F.R.C.P. 41(a)(2). If no renewed motion is filed on or by that date, this dismissal will be with prejudice."

On December 28, 1992, three days before the filing deadline, Durrani requested a 30–day extension of time, suggesting that the INS proceeding had prevented him from paying due attention to the section 2255 proceeding. The court denied Durrani's request holding that, "[a]s this matter has been continued innumerable times and as the reason for requesting this extension is that the movant himself has not given adequate attention to this matter, the motion is DENIED in the interest of finality, and the petition hereby ordered dismissed with prejudice." Durrani did not appeal the court's denial of the motion.

Durrani was released from prison in September 1992. In 1995, the INS declared Durrani deportable. Durrani challenged this determination and sought political asylum. According to Durrani, his efforts were denied in October 1997 because the INS deemed Durrani an aggravated felon pursuant to the 1996 Amendments to the immigration laws.[3] Durrani

---

**3.** In 1992, when Durrani was found guilty, his

conviction was not classified as an aggravated

then voluntarily left the United States in January 1998. Durrani claims he spent the next three years attempting to gain a visa to reenter the United States and that it was not until recently (at some point in 2001) that he realized the INS would not grant him a visa.

On January 14, 2002, ten years after he was released from prison and fifteen years after he was convicted, Durrani filed the current petition seeking to vacate his sentence. Durrani argues that the court should grant the petition because prior to trial, and during the section 2255 proceedings, the government failed to disclose potentially exculpatory/impeachment evidence that could have corroborated his claim that he was working on behalf of Pires and Colonel North. Durrani submits that, if the undisclosed documents had been turned over, he would have potentially been able to link Pires to the CIA, thereby impeaching Moyer's testimony that the CIA did not use private individuals to gather military parts and that the CIA did not have any records of Pires. Alternatively, Durrani requests the court to grant him additional discovery to support his claim that he was working in concert with the United States government. Durrani believes that if his conviction is vacated he will be able to obtain a visa to re-enter the United States. The government moves to dismiss the petition, arguing that his claims are procedurally barred because he previously litigated the current claims in his prior habeas corpus petition that was denied with prejudice. In addition, the government argues that Durrani's claims are untimely. Alternatively, the government argues that the petition should be denied on the merits because Durrani has presented no evidence that the government withheld potentially exculpatory/impeachment evidence. The government then argues that Durrani should not be permitted additional discovery—fifteen-years after he was convicted, ten years after the habeas corpus deadline passed and seven years after he was deported—to support an otherwise meritless claim.

## II. DISCUSSION

### A. Propriety of Collateral Attack.

Prior to reaching the merits of the co-ram nobis petition, the court must determine whether, in light of Durrani's prior habeas corpus petition, which raises grounds identical to those in the current petition, the petition is properly before the court. *Polizzi v. United States*, 550 F.2d 1133, 1135–36 (9th Cir.1976) ("Although principles of res judicata do not bar a prisoner from re-litigating on … coram nobis issues raised in the original appeal, a district court may refuse to entertain a repetitive petition … previously determined on the merits.") (internal quotations omitted) (citing *Kaufman v. United States*, 394 U.S. 217, 227, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969)); *see also Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir.1980) (recognizing that, absent special circumstances, once a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a coram nobis petition); *Willis v. United States*, 654 F.2d 23 (8th Cir.1981) ("[C]oram nobis may not be used to relitigate matters raised in a § 2255 motion."); *Klein v.*

---

felony. *See* 8 U.S.C. § 1101(a)(43) (1994); *Echendu*, 2003 WL 21653370 *4. As such, he was not subject to deportation under the immigration laws in force at the time. Pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), however, Durrani's conviction is now classified as an

aggravated felony, making Durrani deportable. *See id; see also United States v. Luna–Reynoso*, 258 F.3d 111, 113 (2d Cir.2001) (upholding the application of the redefinition of aggravated felony to convictions prior to IIRIRA).

*United States,* 880 F.2d 250, 254 n. 1 (10th Cir.1989) ("[C]oram nobis relief is not available to litigate issues already litigated; it is reserved for claims which have yet to receive their first disposition.") (citing *United States v. Keane,* 852 F.2d 199, 203 (7th Cir.1988)).

It is appropriate to use the same analytical framework when ruling on the propriety of current coram nobis petition as when analyzing successive habeas corpus petitions. *See Fleming v. United States,* 146 F.3d 88, 90 (2d Cir.1998) (recognizing that "because of the similarities between coram nobis proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases") (quoting *Blanton v. United States,* 94 F.3d 227, 235 (6th Cir.1996)). Accordingly, the court will refuse to entertain a coram nobis petition if: (1) the same grounds presented in the current petition were determined adversely to petitioner in an earlier collateral proceeding; (2) the prior determination was on the merits, and (3) the "ends of justice" would not be served by reaching the merits of the repetitive grounds in the current petition. *Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (setting the standard for determining the propriety of successive habeas corpus petitions); *United States ex rel. Schnitzler v. Follette,* 406 F.2d 319, 322 (2d Cir.1969) (reversing a district court's decision to entertain a habeas corpus application when the application was factually and legally identical to one previously rejected on the merits by the Second Circuit).

After applying the three-part test, it is clear that the court should not entertain the merits of Durrani's coram nobis petition. First, the grounds presented in the section 2255 petition are the same grounds presented in the current petition. In his section 2255 petition, Durrani requested the court to vacate his sentence because, in part, the government failed to disclose evidence that the "United States government knew at the time of trial that private people, directly or indirectly, including Manuel Pires, among others, were involved in the procurement of weapons, ... at the behest of the United States government or its agents and with their discretion and encouragement, as part of an effort to free American Hostages in Iran ...." In the current petition, Durrani claims that the government failed to disclose exculpatory or potentially exculpatory evidence, either at the time of trial and/or during the course of the section 2255 proceedings, that would have linked Pires to the United States government's effort to export arms to Iran. Durrani argues that evidence demonstrating that the government was using Pires, a private party, to locate military spare parts, would have supported his claim that he was working with Pires to secure arms for the United States to ship to Iran. Accordingly, Durrani presents the same grounds for relief in the current petition as he previously raised in his section 2255 petition. *Fleming v. United States,* 1993 WL 37304 at *2 (E.D.N.Y. Feb. 9, 1993) (a ground for relief is simply a sufficient legal basis for granting the relief sought, and identical grounds may often be proved by different factual allegations) (internal citations omitted) (quoting *Sanders,* 373 U.S. at 15, 83 S.Ct. 1068). In addition, it is clear that the habeas corpus petition was determined adversely to Durrani because it was dismissed with prejudice.

Second, "[a] dismissal with prejudice is a 'final judgment' on the merits which will bar a second suit between same parties for same cause of action." *Cleveland v. Higgins,* 148 F.2d 722, 724 (2d Cir.1945) (recognizing that for res judicata purposes "a dismissal with prejudice is a final judgment on the merits which will bar

a second suit between the same parties for the same cause of action."); *Pfotzer v. Amercoat Corp.*, 548 F.2d 51, 52 (2d Cir. 1977); *Phillips v. Shannon*, 445 F.2d 460 (7th Cir.1971) (recognizing that the overwhelming weight of authority holds that a dismissal with prejudice constitutes a disposition on the merits).

■ Third, Durrani argues that, the "ends of justice" would be served by the court reaching the merits of the current petition. The Second Circuit has interpreted "the ends of justice" "to include situations in which the relevant facts had not been adequately developed on petitioner's first application, and instances where a change in the law had occurred since the previous determination against him." *Schnitzler*, 406 F.2d at 321 (interpreting *Sanders*, 373 U.S. at 16–17, 83 S.Ct. 1068); *United States v. Bradford*, 178 F.Supp. 709, 711 (D.C.N.Y.1959). Neither of those situations applies here.

Durrani submits, in principal part, an internal OIC memorandum (hereinafter referred to as "Exhibit 8") [4] as evidence in support of his claim that the government was untruthful about its association with

Pires and that the government withheld *potentially* exculpatory or impeachment evidence. Exhibit 8 does not indicate that either Durrani or Pires worked on behalf of the United States government or one of its agencies. At most, Exhibit 8 suggests that, in 1988, the CIA possessed a document that connected Pires to the international gray arms market. Even assuming that the CIA had evidence of such a connection, that connection does not lend support to Durrani's claim that he worked directly or indirectly for the United States government.[5] Moreover, the ends of justice would not be served by reaching the merits of the current petition. Durrani was given until December 31, 1992, to gather evidence to support his section 2255 petition. On December 28, 1992, Durrani requested a 30–day extension to support his claim. The request was denied. If Durrani believed that the court erroneously denied the deadline extension, he should have appealed. Instead, Durrani asks the court to take up what amount to a successive section 2255 petition some ten years later after the deadline passed.

4. Exhibit 8 reads as follows:

TO: Bob Scwartz
FROM: Randy Bellows
DATE: January 11, 1988
RE: Durrani

The CIA showed me a document yesterday concerning IGAM (International Gray Arms Market). In it were references to one or more of the individuals listed in paragraphs [sic] 5 of my Durrani Brady list. (The names are Pires, Dost, Zadeh.) I've requested this document from the CIA and asked Rick Page to draw it to your attention when it comes in. This is a document we may want to turn over to the USAO (although we'll probably need CIA's "Third Agency" permission to do so.) cc: Rick Page

5. Durrani also submitted an affidavit of Pires ("Exhibit 6"). The affidavit is unsworn. In addition, Pires does not claim in the affidavit to have been working for the United States

government or any agency of the government. Rather, Pires states that he was working with the government of Iran to purchase military equipment from Israel and from Israeli companies. At oral argument, Durrani's counsel admitted that the affidavit "does not say in any shape or form that [Durrani] was operating with the United States Government." Tr. 07/25/03 at 17. Durrani also submitted correspondence between the United States Attorney's Office and the OIC relating to potential communications between Durrani and Pires. *See* Durrani's Exhibits 15 and 16. Durrani contends that, because the correspondence indicates that each side would search for files or records relevant to Durrani's defense, such records or files actually existed. Consistent with his argument regarding Exhibit 8, without knowledge that any relevant documents exist, Durrani requests the court to speculate that the government possesses evidence in support of his claims.

In sum, the petitioner has made no showing warranting reconsideration of his claim. Durrani's claim that he was excused from the licensing provisions or that he received an inequitable sentence in light of his work on behalf of the United States government was developed at trial, on appeal, in the Rule 35 motion and in the section 2255 proceeding. This is Durrani's fourth post-conviction attempt to litigate the same issue that has previously and repeatedly been decided against him. In the current petition, Durrani provides no new credible evidence supporting his connection to the United States government. Accordingly, in the absence of credible new evidence or a change of law, Durrani is not entitled to another review of that issue. *See Schnitzler*, 406 F.2d at 321; *United States v. Stimac*, 684 F.Supp. 545, 547 ("even if [Stimac] could move under coram nobis, the writ presently before the court raises the same *Brady* claim that this Court determined petitioner Stimac procedurally defaulted on in his previous § 2255 motions").

Durrani's present petition is procedurally barred. Nevertheless, because it is always possible that the appellate court may disagree, this decision will consider the merits of the coram nobis petition.

### B. Coram Nobis

■ Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a district court is authorized to grant the common law writ of error coram nobis. 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions agreeable to the usages and principles of law."); *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (holding that the enactment of 28 U.S.C. § 2255 did not supersede the availability of writ of coram nobis). The writ is available as a "remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998). The court is authorized to grant the writ, however, only "under circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511, 74 S.Ct. 247; *Carlisle v. United States*, 517 U.S. 416, 429, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (stating that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate.") (bracketed material in original) (quoting *United States v. Smith*, 331 U.S. 469, 475 n. 4, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947)); *United States v. LaPlante*, 57 F.3d 252, 253 (2d Cir.1995) ("Though formally abolished in civil cases, *see* Fed.R.Civ.P. 60(b), the writs of error coram nobis and audita querela remain available in very limited circumstances with respect to criminal convictions."). The writ is issued "to correct errors of fact unknown to the court at the time of the judgment, without fault of the defendant, which, if known, would probably have prevented the judgment." *Morgan*, 346 U.S. at 516, 74 S.Ct. 247.

■ In evaluating a coram nobis claim, the proceedings leading to the petitioner's conviction are presumed to be correct, and the burden rests on the petitioner to demonstrate that: (1) sound reasons exist for his failure to seek appropriate relief earlier; (2) he continues to suffer legal consequences from his conviction that may be remedied by granting of the writ; and (3) granting such relief is necessary under the circumstances to achieve justice. *Foont v. United States*, 93 F.3d 76, 79 (2d Cir.1996); *Morgan*, 346 U.S. at 512, 74 S.Ct. 247.

#### 1. Sound Reasons for Delay

■ The first issue is whether petitioner's delay in seeking relief renders coram

nobis relief unavailable. *Foont*, 93 F.3d at 79. More specifically, the petitioner has the burden to provide sound reasons why he failed to secure prior collateral relief, *see Morgan*, 346 U.S. at 512, 74 S.Ct. 247; *Foont*, 93 F.3d at 79, which includes why he failed to seek prior coram nobis relief. *See Echendu v. United States*, 2003 WL 21653370 *7 (E.D.N.Y.2003) (finding that petitioner had not offered a sound reason for the delay in seeking earlier collateral relief and in seeking earlier coram nobis relief). In addition, the "availability" of prior relief is determined by whether or not petitioner could attempt to secure such relief; it is irrelevant whether or not the petitioner would actually be successful in securing it. *United States v. Farley*, 971 F.Supp. 184 (E.D.Pa.1997) (clarifying that the fact that a petitioner is unable to secure § 2255 relief does not mean that such relief in "unavailable" for purposes of coram nobis analysis), *citing Bennett v. United States*, 1997 WL 285987 (N.D.Il. 1997); *Collins v. United States*, 2000 WL 516892 *6 (E.D.N.Y.2000) (dismissing Collins' petition for coram nobis because "Collins [could] not argue that his claim is one that could not have been addressed in any other post-conviction proceeding.").

■ Durrani has not offered any justification why he failed to seek available collateral relief earlier. He cannot argue that his claim is one that could not have been addressed in any other prior post-conviction proceeding because Durrani, in fact, raised the same claim in a prior post-conviction proceeding, namely the section 2255 proceeding. In the current petition, as well as in the section 2255 petition, Durrani argued that the government withheld information that would have supported Durrani's claim that private individuals, including Manuel Pires, secured military parts on behalf of the United States government for shipment to Iran. Accordingly, Durrani is precluded from raising the same claim in the current pro-

ceedings because prior post-conviction relief was available. The fact that Durrani was unable to comply with the section 2255 deadline does not mean that prior section 2255 relief was not available, it only means that Durrani was unable to secure it. *See Farley*, 971 F.Supp. at 186.

In addition, Durrani has failed to adequately explain why he did not seek coram nobis relief earlier. Durrani claims that, in order to conserve limited personal and judicial resources, he attempted to resolve his immigration proceedings prior to seeking coram nobis relief. Durrani admits that "[a]lthough it is true that [the] INS efforts also served as the basis for his delays ten years ago, rather than burden the Court with proceedings that could have become moot through a simple administrative decision, [he] instead chose to wait until it was clear no relief was forthcoming." Durrani Reply Memo. Doc. # 13, at 4; *see also* Tr. 07/25/03, at 4.

This argument fails for several reasons. First, Durrani's concern not to burden the court by filing a proceeding does not excuse Durrani from waiting ten years since he was released from prison to file the current petition. In general, there is nothing inconsistent with a criminal defendant pursing both immigration and judicial remedies simultaneously. Although, in certain circumstances, the pendency of immigration proceedings can justify a short delay in filing a coram nobis petition, such circumstances do not exist in this case. For example, in *Tocci v. United States*, 178 F.Supp.2d 176, 181 (N.D.N.Y.2001), the petitioner filed his habeas corpus petition four months late, yet the court construed the tardy habeas petition as a coram nobis petition. The court excused the four-month delay "given the absence of counsel and of any advice to Tocci of his right to appeal, given the commencement and continued pendency of the removal proceed-

ing, given the absence of any other direct or collateral reviews of Tocci's claims, and given the [brief four-month] period of delay." *Id.* at 182. In the present case, Durrani missed the habeas deadline by ten years and was represented on direct appeal, during the section 2255 proceedings, and on his Rule 35 motion. Whereas Tocci had not availed himself of other avenues of direct or collateral review, the current motion is Durrani's fourth attempt at post-conviction relief.

Second, Durrani erroneously believes that, in analyzing the sufficiency of the sound reason for delay in filing the coram nobis petition, the court should measure the period of delay from the completion of the immigration proceedings until the filing of the coram nobis petition. To the court's knowledge, however, no other court has used the date on which immigration proceedings are completed as the appropriate commencement point for analyzing a petitioner's delay in filing a coram nobis petition. In *United States v. Ko,* 1999 WL 1216730, *4 (S.D.N.Y.1999), the court noted that the appropriate time period in which to analyze a petitioner's delay in filing a coram nobis petition commences with the date of the deportation order. Under that standard, and in light of Durrani's claim that the INS classified him as deportable in 1995,[6] Durrani waited approximately seven years to file the current petition. Alternatively, the court in *Echendu v. United States,* 2003 WL 21653370 *5 (E.D.N.Y. 2003), held that petitioner's delay in filing a corum nobis petition seeking relief from deportation proceedings "is properly calculated with reference to the period between the day the IIRIRA was enacted [September 30, 1996] and the day the petition was filed ...." Under this time

frame, Durrani waited approximately six years.

Regardless of which measure the court uses, Durrani has not provided a sufficient excuse for the tremendous delay in filing his petition. *See Tocci,* 178 F.Supp.2d at 181 ("[T]he sufficiency of the reasons bears an inverse relationship to the length of the delay—the longer the delay, the more compelling must be the reasons."). Typically, "[i]n the absence of a sound reasons provided by the petitioner, the courts have generally found that a belated petition for coram nobis should be dismissed if its filing has been delayed for more than several years." *Echendu,* 2003 WL 21653370 *6 (petitioner barred by unjustified seven-year delay); *Foont,* 93 F.3d at 80 (petitioner barred by unjustified four-year-and-eight-month delay); *Mastrogiacomo v. United States,* 2001 WL 799741, at *2 (S.D.N.Y. July 16, 2001) (petitioner barred by unjustified three-year delay); *cf. Nicks v. United States,* 835 F.Supp. 151, 155 (S.D.N.Y.1993) (petitioner justified a fifteen-year delay because "[a]t no time revealed by the post-sentencing record was Nicks in a condition to evaluate the need for and prospects of coram nobis relief, or to instruct his attorneys in that regard.").

The court does not accept Durrani's concern for conserving personal and judicial resources as a legitimate reason to delay the filing of a coram nobis petition because there is nothing inconsistent with pursuing immigration and judicial remedies simultaneously. Moreover, as compared to *Tocci,* there are no special circumstances excusing the delay. This is Durrani's fourth attempt at post-conviction relief and he was provided with able counsel throughout his judicial proceedings. Accordingly, because Durrani has not provided a sufficient

---

**6.** Even if the INS erroneously classified him as deportable in 1995, as Durrani claims, Durrani was still on notice in 1995 that the INS was going to deport him.

justification for his failure to seek earlier available collateral relief and earlier coram nobis relief, the court need not consider the other elements of the coram nobis petition.

■ In an exercise of caution, however, the court will examine whether Durrani has satisfied the third prong of the coram nobis evaluation.[7]

### 2. Compelling Circumstances

■ To demonstrate compelling circumstances, a petitioner must show a defect in the proceedings that resulted in a "complete miscarriage of justice." *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). Durrani's "compelling circumstances" argument in support of his petition for a writ of coram nobis is premised upon an alleged denial of his constitutional right to a fair trial—on the ground that the prosecutors withheld exculpatory or potentially exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). According to *Brady,* "[t]he suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194; *United States v. Coppa,* 267 F.3d 132, 139 (2d Cir.2001). "Favorable

evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." *Coppa,* 267 F.3d at 139 (citing *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Durrani argues that the government violated *Brady,* in principal part, by failing to disclose the unidentified document referenced in Exhibit 8. *See* Tr. 07/25/03, at 13 ("without a doubt, the primary reliance for at least the existence of [potentially exculpatory *see id.* at 7] is Exhibit 8").

It is not disputed that Exhibit 8, on its face, does not constitute exculpatory material because neither Exhibit 8 itself, nor the document referenced in Exhibit 8, indicates that Durrani worked directly or indirectly on behalf of the United States. At most, Exhibit 8 suggests that the CIA possessed a document that potentially linked Pires to the international gray arms market. Even assuming that to be the case, the document would not constitute

---

7. The court recognizes that a petitioner's inability to re-enter the United States as a collateral consequence to a criminal conviction is a sufficient legal consequence for coram nobis relief. *See Tapia Garcia v. INS.,* 237 F.3d 1216, 1218 (10th Cir.2001) (alien's "inability to reenter and reside legally in the United States with his family is a collateral consequence of his deportation because it is clearly a concrete disadvantage imposed as a matter of law"); *Steele v. Blackman,* 236 F.3d 130, 135 n. 4 (3d Cir.2001) ("Erroneous conviction of an aggravated felony will have several continuing and serious legal consequences for [alien], including serving as a permanent bar

preventing his return to the United States to visit his family."); *Ko,* WL 1216730, at \*4 (holding that deportation proceedings sufficient to demonstrate adverse legal consequences); *Polanco v. United States,* 803 F.Supp. 928 (S.D.N.Y.1992) (same). The government argues that, even if the court vacates Durrani's conviction, Durrani is still not eligible for re-entry into the United States pursuant to the IIRIRA given the nature of the conduct underlying his conviction. Because Durrani clearly fails to demonstrate the other elements of coram nobis, it is unnecessary to determine which party has the correct interpretation of the effect of the IIRIRA.

exculpatory evidence within the meaning of *Brady*. In addition, Exhibit 8 cannot be reasonably interpreted as impeachment evidence. At trial, Charles Moyer of the CIA testified that the CIA had "no record of an association with Manuel Pires." Def. Ex. 4 at 134, 139. Exhibit 8 indicates nothing contradictory to that testimony. Whether or not Pires was linked to the international gray arms market is irrelevant to whether the CIA was associated with Pires. In his affidavit, Pires himself claims to have been working on behalf of Iran. *See* Def. Ex. # 6. Moreover, Moyer testified that the "if Mr. Pires had been employed by or associated with the Central Intelligence Agency" that his records would have reflected that. *Id.* at 139. Durrani has presented no credible evidence undermining Mr. Moyer's testimony.

Durrani argues that if, the unidentified document referred to in Exhibit 8 was disclosed, the document could constitute *Brady* material or the document could lead to the production of other documents that could be considered *Brady* material. As such, Durrani is arguing that the government violated *Brady* by failing to disclose potentially exculpatory and/or impeachment evidence. As such, Durrani's motions falls short of *Brady's* materiality requirement. *Carter v. Rafferty*, 621 F.Supp. 533, 549 fn. 1 (D.N.J.1985) ("There must be a real possibility that the evidence would have affected the result."); *United States v. Agurs*, 427 U.S. 97, 109–110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ("the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish, materiality in the constitutional sense."); *United States v. Williams*, 792 F.Supp. 1120, 1129 (S.D.Ind.1992) (... "the rule of *Brady* is not a rule of discovery, but a doctrine of constitutional error to be raised when specific evidence is withheld which deprives the Defendant of a fair trial.").

Durrani has failed to demonstrate that there is a real possibility that the government withheld *Brady* material. First, Exhibit 8 does not indicate that the government possessed the undisclosed document referenced in Exhibit 8 either at the time of Durrani's trial, appeal or during the section 2255 proceeding. Second, Exhibit 8 does not indicate that the undisclosed document referenced in Exhibit 8 is favorable to Durrani. At most, Exhibit 8 suggests that the unidentified document connects Pires to the international gray arms market. There is no indication that the unidentified document would reveal that either Durrani or Pires worked on behalf of the United States government.[8] Third, Durrani simply hasn't demonstrated that there is a "real possibility" that the undisclosed document could potentially constitute *Brady* material. As such, Durrani's lack of evidence suggesting a real possibility the government violated *Brady* precludes the court from finding compelling circumstances warranting that court to grant the coram nobis petition.

## C. Writ of Audita Querela

 Writs of audita querela and coram nobis "are similar, but not identical." *United States v. Reyes*, 945 F.2d 862, 863 n. 1 (5th Cir.1991). Usually, a writ of coram nobis is used "to attack a judgment that was infirm [at the time it issued], for reasons that later came to light." *Id.* By

---

**8.** The same reasoning applies to Exhibits 15 and 16, which Durrani submits in support of his petition. Those exhibits are letters of communication between the OIC and the United States Attorney's Office regarding efforts to comply with the Government's *Brady* obligations. The letters do not indicate that the government, in fact, had *Brady* material. Again, Durrani's argument relies on pure speculation as to whether *Brady* material exists.

contrast, a writ of audita querela is used to challenge "a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition." *Id.* It is meant "only to allow a defendant to present a defense not discovered until after judgment was rendered." *Id.; see LaPlante,* 57 F.3d at 252 ("Audita querela is probably available where there is a legal, as contrasted with an equitable, objection to a conviction that has arisen subsequent to the conviction . . . ."); *United States v. Tablie,* 166 F.3d 505, 507 (2d Cir.1999) (recognizing the necessity of a legal defect in the conviction in order to obtain relief). In addition, audita querela is not available when the relief sought is available through another post-conviction remedy. *Tablie,* 166 F.3d at 507 (*citing United States v. Holder,* 936 F.2d 1, 5 (1st Cir.1991)); *United States v. Logan,* 22 F.Supp.2d 691, 694 (W.D.Mich.1998) (Where a petitioner's claims "could have been pursued in a § 2255 motion, they cannot come through the audita querela backdoor.").

Durrani is not now raising a new defense, rather he is raising the same defense that he previously raised on direct appeal and in his section 2255 petition, which was dismissed with prejudice. In addition, audita querela is not available because the relief Durrani seeks was available through alternative post-conviction remedies. Accordingly, Durrani's petition for audita querela must be denied.

**D. Discovery**

 In the alternative to granting the current petition, Durrani requests the court to permit him to conduct "very limited narrow supervised discovery." Tr. 07/25/03, at 19. Durrani's version of "very limited narrow discovery" includes requesting all documents that reference Durrani, Pires, or the companies involved in the shipment of arms to Iran, that are in the possession of the: Central Intelligence Agency, National Security Agency, National Security Counsel, National archives, INS and the United States Attorney's Office. *Id.* at 20. In light of the Second Circuit's statement that, "[b]ecause of the similarities between coram nobis proceedings and section 2255 proceedings, the section 2255 procedure often is applied by analogy in coram nobis case," *United States v. Mandanici,* 205 F.3d 519 (quoting *Fleming,* 146 F.3d at 90 n. 2) (internal quotation marks omitted), the section 2255 standard for permitting discovery will be applied to the present coram nobis petition. Accordingly, Durrani is not "entitled to discovery as a matter of course, but must show good cause for his request." *Perez v. United States,* 274 F.Supp.2d 330, 336 (E.D.N.Y.2003) (citing *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997)). Durrani argues that, because the document referenced in Exhibit 8 was not disclosed, it is likely that there are other documents that also were not disclosed. *See* Tr. 07/25/03, at 29. In addition, Durrani argues that, because the burden on the government to produce documents created or maintained over the past two decades is minimal, justice requires discovery if there is even the "slightest" chance of discovering *Brady* material. *Id.* at 27.

Durrani is not permitted additional discovery. Durrani was convicted in 1987. He has sought post-conviction relief through direct appeal, a Rule 35 motion, and a section 2255 motion on the same issue that he raises in the current petition. He has previously been given extensive discovery on the exact same issue. Moreover, if he needed additional discovery in 1992, then he should have appealed Judge Daly's ruling rather than petition the court ten years after the habeas corpus deadline passed. In the current petition, Durrani presents no credible evidence that the government possesses *Brady* material. Given

the lack of a colorable claim, the time delay, and the inevitably enormous burden that would be placed on the government and its agencies to comply with Durrani's discovery requests, Durrani's request must be denied. *See Perez*, 274 F.Supp.2d at 330 (denying a discovery request when it is appropriately characterized as a "mere fishing expedition").

## III. Conclusion

Durrani's petition for a writ of coram nobis or audita querela [doc. # 1] is DENIED. In addition, Durrani's request to conduct discovery [doc. # 1] is also DENIED.

The clerk shall close this file.

It is so ordered.