Sweet, D.J.
*147 Petitioner Jacqueline Hernandez ("Hernandez" or the "Petitioner") has moved for a writ of error coram nobis , pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq. , to remedy the collateral consequences of her criminal conviction in 03 Cr. 1257 (RWS), in which she pled guilty to conspiracy to distribute cocaine. Based on the facts and conclusions set forth below, the Petitioner's motion is granted.
I. Facts & Prior Proceedings
Petitioner became a Legal Permanent Resident ("LPR") of the United States on October 20, 1992. See Pet'r's Br. 2. On October 6, 2003, Petitioner was arrested, and on October 21, 2003, an indictment was filed in court against Hernandez and other co-defendants for engaging in a conspiracy to commit narcotics trafficking, in violation of 21 U.S.C. § 846. The Petitioner retained the services of Amelio Marino ("Marino" or "Petitioner's counsel") to represent her in the original criminal proceeding. The Petitioner testified that she told Marino that under no circumstances would she plead guilty if it would cause her to lose her LPR status. See Pet'r's Br. 3 & Ex. would cause her to lose her LPR status. See Pet'r's Br. 3 & Ex. 1. Petitioner further alleges that she informed Marino that if her entering a guilty plea would have immigration consequences, she would rather have a trial, and that Marino assured her that the plea would not cause her to lose her LPR status and face deportation. See id.
As such, the Petitioner pled guilty before this Court on June 10, 2004 to conspiracy to distribute cocaine. See id. Ex. 2. At the plea hearing, Hernandez confirmed that she was satisfied with her attorney's representation. See id. at 11 ("Are you satisfied with him?" to which Petitioner responded "Yes"). In allocuting Hernandez, this Court did not specifically ask the Petitioner if she was aware of the immigration consequences of her plea, but instead addressed a variant of this inquiry to Petitioner's counsel. See id. 11-12 ("Mr. Marino, have you had an opportunity to advise Miss Hernandez of her rights, the nature of the charges and the consequence of her plea?" to which counsel responded "Yes, I have, Judge"). Finally, at the close of the hearing, the Court accepted Hernandez's guilty plea. Id. at 12-13. On June 2, 2005, this Court sentenced Hernandez to time served and three years' supervised release. See id. Ex. 3 at 14. Hernandez did not appeal her conviction or seek any other post-conviction relief at that time.[1]
On April 23, 2008, the United States Department of Homeland Security ("DHS") issued a Notice to Appear (the "Notice") in which it alleged that Hernandez was removable as a consequence of her *148 conviction. See Gov't Br. Ex. 1. The Notice was served directly on Hernandez on that day, at which point she was provided oral notice in Spanish of the time and place of her removal hearing and the consequences of failure to appear for that hearing. Id. at 5. Hernandez contacted her attorney, Marino, in response to receiving the Notice. See Pet'r's Br. 4. Marino then represented Hernandez through the majority of her removal proceedings before the Immigration Court (the "IC" or the "Immigration Judge"), which spanned about six years. Id.
As Petitioner's counsel, Marino caused the removal proceedings to be adjourned an inordinate number of times. For example, at the first appearance on February 9, 2009, Marino requested an adjournment to provide him time to review Hernandez's file, and to file an application on her behalf. See id. At the next court date on May 19, 2009, Marino had yet to file an application on behalf of Hernandez, and once again requested an adjournment from the IC in order to file an S-Visa.[2] See id. 5. Yet again, at the next hearing on May 12, 2012, the IC adjourned the proceeding to allow Marino to appear on behalf of Hernandez, who instead was represented on that occasion by another attorney from Marino's law office. See id. On November 27, 2012, the IC allegedly questioned Marino for having again failed to file any application on behalf of Hernandez. See id. The Immigration Judge stated her expectation that the relevant documents be submitted to the court by the next hearing. See id. Shockingly, on June 4, 2013, and once again on December 3, 2013, Marino failed to file any application or document. See id. Further, on September 9, 2014, Marino claimed to have completed an application on behalf of Hernandez, but the Immigration Judge indicated that no such documents had been submitted. See id. The Immigration Judge provided that if Marino failed on yet one more occasion, Hernandez would be ordered removed from the United States. See id. Hernandez alleges that she did not have an interpreter at this hearing, and so remained uninformed as to the seriousness of this warning. See id.
On February 3, 2015, although Marino filed for cancellation on behalf of Hernandez, this application was dismissed for want of jurisdiction. See id. 6. At this point, the Immigration Judge threatened Marino with sanctions for engaging in dilatory tactics for six years. See id. Consequently, the IC then ordered Hernandez deported. See id.
Shortly thereafter, Hernandez filed a pro se appeal of the deportation order, which the Board of Immigration Appeals (the "BIA") dismissed on March 9, 2016. See id. Next, Hernandez retained new counsel, and filed a motion to reopen, alleging ineffective assistance of former counsel in accordance with Matter of Assaad , 23 I & N Dec. 553 (BIA 2003) and Matter of Lozada , 19 I&N Dec. 637 (BIA 1988), aff'd , 857 F.2d 10 (1st Cir. 1988). See id. Exs. 5 & 6. The motion also included an asylum application seeking relief from removal. See id. Ex. 6. On December 20, 2016, the BIA found that Hernandez had "exercised due diligence in the filing of the instant motion," and granted the motion to reopen on the basis of Marino's ineffective assistance of counsel, remanding the record for further proceedings. Id. The Petitioner's asylum application currently remains open before the IC. See Pet'r's Br. 7. Marino is recently deceased.
*149 The Petitioner filed the instant motion for a writ of error coram nobis on September 17, 2017. The motion was argued and marked fully submitted on December 20, 2017.
II. The Applicable Standard
"A coram nobis petition is a collateral proceeding through which a court may correct fundamental errors in a prior final judgment." Moskowitz v. United States , 64 F.Supp.3d 574, 577 (S.D.N.Y. 2014) (citing United States v. Morgan , 346 U.S. 502, 507-08, 74 S.Ct. 247, 98 L.Ed. 248 (1954) ). The All Writs Act, 28 U.S.C. § 1651(a), confers authority to federal courts to grant the writ. United States v. Denedo , 556 U.S. 904, 911, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009). Critically, such relief is "not a substitute for appeal, and ... is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." United States v. Mandanici , 205 F.3d 519, 524 (2d Cir. 2000) (citing Foont v. United States , 93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and ellipsis omitted) ). "[T]he granting of coram nobis normally results in the expungement of the conviction, with no possibility of further proceedings to determine whether the petitioner was guilty of the offense charged." Id. at 532.
Admittedly, the bar for succeeding on such a writ is a high one, first, because great respect is placed upon the finality of judgments, see Morgan , 346 U.S. at 511, 74 S.Ct. 247, and second, because "a court must presume that the proceedings were correct, and the burden of showing rests on the petitioner." See Fleming v. United States , 146 F.3d 88, 90 (2d Cir. 1998) (citing Nicks v. United States , 955 F.2d 161, 167 (2d Cir. 1992) ). Indeed, the United States Supreme Court has noted that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." Morgan , 346 U.S. at 511, 74 S.Ct. 247 ; see also United States v. Osser , 864 F.2d 1056, 1059 (3d Cir. 1988) ("The interest in finality of judgments is a weighty one that may not be casually disregarded. Where sentences have been served, the finality concept is of an overriding nature, more so than in other forms of collateral review such as habeas corpus , where a continuance of confinement could be manifestly unjust.").
Accordingly, a successful petition for coram nobis relief "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Fleming , 146 F.3d at 90 (quoting Foont , 93 F.3d at 79 ).
III. The Petitioner's Request for a Writ of Error Coram Nobis is Granted
a. Hernandez Has Demonstrated Circumstances Compelling Such Action to Achieve Justice
The Petitioner asserts that her former counsel's performance during the original proceedings before this Court constituted ineffective assistance of counsel sufficient to satisfy the first element of a petition for writ coram nobis. Specifically, Hernandez testified to the effect that Marino failed entirely to inform her of the immigration consequences of accepting her guilty plea, and that she was in no other way informed of the possibility of facing deportation upon accepting such a plea. See Pet'r's Br. Ex. 1 at 1. The Government argues that *150 Hernandez has not satisfied her burden of establishing that Marino was ineffective, particularly because her only support for this claim is a self-serving affidavit. See Gov't Br. 4-5. Moreover, the Government asserts that Hernandez cannot demonstrate that she suffered any prejudice because, in all likelihood, she would have been found guilty at trial anyway.
Because "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process," see Lafler v. Cooper , 566 U.S. 156, 162, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), "ineffective assistance of counsel is one ground for granting a writ of coram nobis." See Kovacs v. United States , 744 F.3d 44, 49 (2d Cir. 2014). Pursuant to Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: "1) the defense counsel's performance was objectively unreasonable; and 2) the deficient performance prejudiced the defense." Kovacs , 744 F.3d 44, 49 ; see also Hill v. Lockhart , 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (holding that the Strickland test applies to guilty plea challenges).
To sufficiently state a claim under the first prong of Strickland ,"a defendant must allege and demonstrate that his counsel's error clearly resulted from neglect or ignorance, rather than from informed professional deliberation." United States v. Bosch , 584 F.2d 1113, 1121 (1st Cir. 1978) (internal quotation marks and citation omitted). Put another way, "[a]n attorney has a duty to research the applicable law and to advise his client in such a way as to allow him to make informed choices, when the attorney undertakes to represent a criminal defendant." United States v. Khalaf , 116 F.Supp.2d 210, 213 (D. Mass. 1999) (citation omitted). In the context of immigration consequences attaching to a finding of guilt, the Supreme Court has noted that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." Padilla v. Kentucky , 559 U.S. 356, 367, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) ; see also id. (internal citations omitted) ("[A]uthorities of every stripe-including the American Bar Association, criminal defense and public defender organizations, authoritative treatises, and state and city bar publications-universally require defense attorneys to advise as to the risk of deportation consequences for non-citizen clients ....").
Where statutory language makes the deportation consequences of a plea "truly clear, ... the duty to give correct advice is equally clear." See id. at 369, 130 S.Ct. 1473. For example, in Padilla , the Court found the relevant immigration statute, 8 U.S.C. § 1227(a)(2)(B)(i), to be "succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction."[3] Id. at 368, 130 S.Ct. 1473. While the Court recognized that "[i]mmigration law can be complex," and under many circumstances "the law is not succinct and straightforward," it nevertheless held that where "the consequences of [the defendant's] plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect,"
*151 the defendant had sufficiently alleged constitutional deficiency to satisfy the first prong of Strickland . Id. at 369, 130 S.Ct. 1473.
Here, the Notice listed two immigration statutes as the basis for Hernandez's removability, including 8 U.S.C. § 1227(a)(2)(B)(i), that listed in Padilla.[4] ibr.US_Case_Law.Schema.Case_Body:v1">See id. ; Gov't Br. Ex. 1 at 4. As such, the Supreme Court has already determined that the terms of the statute clearly and definitely establish the removal consequences for a defendant's underlying plea, thereby making it objectively unreasonable for defense counsel to fail to inform the defendant as such. See Padilla , 559 U.S. at 369, 130 S.Ct. 1473. Therefore, assuming the Petitioner's allegations are true, Marino was under a clear obligation to inform Hernandez that she might be deported upon accepting a guilty plea, and counsel's alleged failure to inform Hernandez mounts to objectively unreasonable behavior.
A critical question remains whether the Petitioner has put forward sufficient, reliable evidence to demonstrate that Marino did in fact fail to inform her of the risk of deportation. The Government argues that Hernandez's "meager factual assertions do not support the relief she seeks" because she has offered only her own affidavit to substantiate her claim of ineffective assistance of counsel. See Gov't Br. 4. The Government cites to case law providing that "[s]elf-serving allegations of ineffective assistance of counsel are not enough to overturn a knowing and voluntary guilty plea," see Nangia v. United States , No. 11 Civ. 6056 (RMB), 2012 WL 4513477, at *2 (S.D.N.Y. Oct. 2, 2012), and that "a court need not accept a petitioner's uncorroborated, self-serving testimony as true" in deciding a claim for ineffective assistance of counsel. See Grullon v. United States , No. 99 Civ. 1877 (JFK), 2004 WL 1900340, at *6 (S.D.N.Y. Aug. 24, 2004).
Here, in addition to her sworn testimony, the Petitioner has proffered a BIA finding that Marino's assistance during Hernandez's immigration proceedings was ineffective. See Pet'r's Br. Ex. 6. The underlying logic of the aforementioned prohibition is to prevent defendants from fashioning claims for ineffective assistance of counsel out of whole-cloth upon the death of their former attorneys. However, where there is no other sworn testimony or factual support that someone in the Petitioner's situation might be expected to possess; where there is no way for the attorney to testify as to the relevant facts due to death or otherwise; and where, as here, another court has already determined that counsel was ineffective in a similar legal context, it is appropriate to accept the Petitioner's testimony as true. Circumstances such as these lead to the conclusion that Marino failed to inform Hernandez of the deportation consequences of accepting the plea agreement.
The second prong of Strickland demands that the Petitioner demonstrate that "but for counsel's alleged errors, 'the result of the proceeding would have been different.' " Nangia , 2012 WL 4513477, at *2 (citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ). As relevant here, "[w]hen a defendant alleges his counsel's *152 deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain .... We instead consider whether the defendant was prejudiced by the denial of the entire judicial proceeding ... to which he had a right." Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1965, 198 L.Ed.2d 476 (2017) (internal quotation marks and citations omitted). Where a defendant can substantiate his expressed preferences by "contemporaneous evidence" that there exists "a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation," the defendant has established prejudice.[5] Id. at 1968-69. For example, in Lee , the Court found that the defendant had provided "substantial and uncontroverted evidence" establishing that he would not have accepted a plea had he known it would lead to deportation where "Lee had lived in the United States for nearly three decades, had established two businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents." Id. The Court further explained that:
But for his attorney's incompetence, Lee would have known that accepting the plea agreement would certainly lead to deportation. Going to trial? Almost certainly. If deportation were the "determinative issue" for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that "almost" could make all the difference.
Id. When the collateral consequences of a plea appear "similarly dire" compared to going to trial, common sense dictates that "even the smallest chance of success at trial may look attractive." Id. at 1966.
Hernandez has similarly demonstrated a reasonable probability that she would have rejected the plea had she known that it would lead to her mandatory deportation. Hernandez has maintained LPR status in the United States since 1992, and had thus resided in the United States for 11 years as of the time of accepting the plea, and 26 years to today's date. See Pet'r's Br. 2. She has four children, all of whom reside in the United States. Hernandez was never made aware of the immigration consequences of accepting a plea either by her former attorney or by this Court during the plea allocution, but she nevertheless repeatedly asked her counsel whether she might face deportation by accepting such a plea. See Pet'r's Br. Ex. 1 at 1 & Ex. 2. Marino replied on more than one occasion that she would not. See id. Ex. 1 at 1. In light of the combination of these outlier circumstances, the Petitioner has demonstrated that she would have opted for a trial had she known *153 of the imminent deportation consequences of accepting a plea. Cf. e.g. , People v. Clemente , 58 Misc. 3d 266, 66 N.Y.S.3d 404 (N.Y. Sup. Ct. 2017) (finding petitioner failed to satisfy this burden where "[n]ot once in his affidavit does the defendant state that at the time of the instant plea, the immigration consequences were a significant factor in his decision whether to plead guilty, or that had he known he would be deported he would have rejected the plea deal"); Dodd v. United States , No. 16-11598, 709 Fed.Appx. 593, 595, 2017 WL 4231073, at *2 (11th Cir. Sept. 25, 2017) (holding that petitioner failed to establish the requisite 'reasonable probability' because "unlike the defendant in Lee , Dodd's trial counsel, Wade Rolle, at least informed Dodd that she would be subject to deportation proceedings.").
Accordingly, the Petitioner has established prejudice, and thereby demonstrated that her circumstances compel such action as a writ of coram nobis to achieve justice.
b. Hernandez Has Demonstrated Sound Reasons for Her Failure to Seek Relief Earlier
A petition for a writ of coram nobis may be "time barred if the petitioner cannot provide a justified reason for failure to seek appropriate relief at an earlier date." Cruz v. New York , No. 03 Civ. 9815, 2004 WL 1516787, at *4 (S.D.N.Y. July 6, 2004) (citing Foont , 93 F.3d at 80 ). In deciding the timeliness of a petition, "[t]he critical inquiry is whether the petitioner knew or should have known earlier of facts underlying the claim for coram nobis relief." Nangia , 2012 WL 4513477, at *3 (citing Evangelista v. United States , No. 11 Civ. 5085, 2012 WL 3818109, at *3 (E.D.N.Y. Sept. 4, 2012) (internal quotations and citation omitted) ). The timeliness inquiry "must be determined on a case-by-case basis, with full regard for the attendant circumstances." Nicks v. United States , 835 F.Supp. 151, 153 (S.D.N.Y. 1993). "[I]f petitioner does not proffer a sound reason for delay, 'courts have held that [such petition] should be dismissed if its filing has been delayed for more than several years.' " Rodriguez v. United States , No. 98 Cr. 764 (MHD), 2012 WL 6082477, at *9 (S.D.N.Y. Dec. 4, 2012) (citing Cruz , 2004 WL 1516787, at *4 ). Moreover, "the appropriate time period in which to analyze a petitioner's delay in filing a coram nobis petition commenced with the date of the deportation order." Durrani v. United States , 294 F.Supp.2d 204, 214 (D. Conn. 2003).
For the sake of clarification and the ease of analysis, a quick summary of the Petitioner's prior proceedings is appropriate. On April 23, 2008, Hernandez received the Notice, which alleged she was removable by the DHS. See Gov't Br. Ex. 1. At that point, Hernandez contacted Marino, who represented her during the removal proceedings before the IC spanning the next six years, until she was deported on February 3, 2015. See Pet'r's Br. 6. Immediately thereafter, Hernandez filed a pro se appeal of the IC's deportation order, which the BIA dismissed on March 9, 2016. See id. Then, retaining new counsel, on April 18, 2016, Hernandez filed a motion to reopen with the BIA on the basis of Marino's ineffective assistance during the removal proceedings before the IC, which the BIA granted on December 20, 2016. See id. Exs. 5 & 6. Finally, on September 17, 2017, Hernandez filed the present coram nobis petition.
Outlining this series of procedural events is important as much of the time between April 23, 2008, when the Petitioner received the deportation order, and September 17, 2017, when she filed this petition, can be justifiably accounted for.
*154 The BIA has determined that Marino's counsel during the immigration proceedings was ineffective, and this Court respects and acknowledges this determination, therefore accounting for the delay until February 3, 2015, when the Petitioner no longer retained Marino's services. See Carnesi v. United States , 933 F.Supp.2d 388, 397 (E.D.N.Y. 2013) (finding that petitioner satisfied the 'sound reason' prong by establishing that his counsel had acted ineffectively). Next, the Petitioner filed a pro se appeal of the IC's deportation order on March 9, 2016, before retaining her current counsel and filing the motion to reopen with the BIA on April 18, 2016. Given that Hernandez was in between counsel from February 3, 2015 to April 18, 2016, she nonetheless demonstrated a diligent effort to pursue her claims sufficient to provide a sound reason for delay. Cf. Dixon v. United States , No. 14-CV-960 (KMK), 2015 WL 851794, at *8 (S.D.N.Y. 2015) (finding that petitioner offered "sound reasons" for his failure to file earlier where he reasonably believed he could not file until being released from prison, and where he otherwise demonstrated a diligent effort in pursuing his claims).
Accordingly, the Petitioner's time to file this petition began on April 18, 2016. Hernandez's new counsel thereafter timely filed this petition within a reasonable time. See Medina v. United States , Nos. 12 Civ. 238 (JPO), 86 Crim. 238 (WK), 2012 WL 742076, at *7 (S.D.N.Y. Feb. 21, 2012) (finding petition timely where petitioner filed approximately two years after becoming aware of the immigration consequences of his conviction). As such, the petition is timely.
c. Hernandez Continues to Suffer Legal Consequences from Her Conviction
Finally, the Petitioner must demonstrate that she "continues to suffer legal consequences from his conviction that may be remedied by granting the writ." See Foont , 93 F.3d at 78. There is no dispute by the parties that Hernandez's imminent deportation satisfies this element. See Gov't Br. at 3; see also Kovacs , 744 F.3d at 49 (finding that there is "no doubt that [petitioner's] likely ineligibility to reenter the United States constitutes a continuing consequence of his conviction."). Accordingly, the Petitioner has met all the requirements of a petition for writ of error coram nobis.
IV. Conclusion
For the reasons set forth above, the Petitioner's motion for a writ of error coram nobis is granted.
It is so ordered.

Meanwhile, the Petitioner alleges that she remained fully unaware of the immigration consequences of her plea, particularly in light of receiving permission from the United States Probation Office to travel to the Dominican Republic from August 9, 2005 to September 13, 2005. See id. Ex. 4.

At this point, Hernandez alleges to have briefly dismissed Marino and retained another attorney, Reverend Vitaglione. See id. However, Vitaglione was soon after disbarred, so Hernandez returned to Marino. See id.

For reference, the statutory language provides that:
Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.
See 8 U.S.C. § 1227(a)(2)(B)(i).

Here, the Notice, dated April 23, 2008, lists 8 U.S.C. §§ 237(a)(2)(B)(i) and 237(a)(2)(A)(iii) as the applicable immigration statutes. See Gov't Br. Ex. 1 at 4. However, the current versions of these statutes are located at 8 U.S.C. §§ 1227(a)(2)(B)(i) and 1227(a)(2)(A)(iii), respectively. See 8 U.S.C. §§ 1227(a)(2)(B)(i), 1227(a)(2)(A)(iii). The language in the amended versions is identical to their predecessors. See id. Accordingly, for simplicity's sake, this Opinion refers to the current versions of the statutes.

To elaborate, the Supreme Court in Lee cautioned that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 1967. Rather, "[j]udges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences," id. , in part because "categorical rules are ill suited to an inquiry that we have emphasized demands a 'case-by-case examination' of the 'totality of the evidence,' " id. at 1966 (citing Williams v. Taylor , 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (internal quotation marks omitted) ). This inquiry "focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." Id. at 1966. When the collateral consequences of a plea appear "similarly dire" compared to going to trial, common sense dictates that "even the smallest chance of success at trial may look attractive." Id.